*Tonia Powell v. American Red Cross*

# Exhibit A



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

TONIA POWELL
    Vs.
AMERICAN RED CROSS

C.A. No.    2006 CA 004492 B

## <u>INITIAL ORDER</u>

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge ANNA BLACKBURNE-RIGSBY
Date:  June 9, 2006
Initial Conference: 9:30 am, Friday, September 08, 2006
Location:  Courtroom 519
        500 Indiana Avenue N.W.
        WASHINGTON, DC  20001

CA Form 1

# Superior Court of the District of Columbia

### CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

0004492-06

vs.

TONYA POWELL *Plaintiff*
13900 PAVENTRY WAY, Apt. O
Germantown, MD 20874

Civil Action No. _____

*Defendant*

THE AMERICAN RED CROSS
2025 E. Street, N.W.
Washington, D.C. 20006

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

BRIAN C. PLITT
Name of Plaintiff's Attorney

1239 E. st. S.E., Ste. 4
Address

WASHINGTON DC 20003

(202) 546-5493
Telephone

*Clerk of the Court*



By _____
Deputy Clerk

Date _____

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

**NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.**



IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA -- CIVIL DIVISION

TONIA POWELL
13400 Daventry Way, Apt. O
Germantown, MD  20874
    Plaintiff,

v.

AMERICAN RED CROSS
2025 E. Street, N.W.
Washington, DC  20006
    Defendant.

RECEIVED
Civil Clerk's Office
JUN 1 0 2006
Superior Court of the
District of Columbia
Washington, D.C.

*2006 ca 4492*

## AMENDED COMPLAINT FOR DISCRIMINATION AND RETALIATION UNDER THE DCHRA, VIOLATION OF THE DC WAGE AND HOUR LAW, AND BREACH OF EXPRESS OR IMPLIED CONTRACT

1.  Plaintiff Tonia Powell is a resident of Maryland at 13400 Daventry Way, Apt. O, Germantown, MD  20874.

2.  Defendant American Red Cross, upon information and belief, is a District of Columbia not-for-profit corporation, qualified to do business in the District of Columbia and has done business in the District of Columbia at all time material hereto.

3.  The American Red Cross provides relief services to distressed victims of disasters and helps prevent, prepare for, and respond to emergencies at the national and international levels. It may be served through the Office of the General Counsel, c/o John Bryan or Shari Crandall at its address:  2025 E. St., N.W., 9th Fl., Washington, DC  20006.

JURISDICTION

4.  This Court has jurisdiction over this action under DC Code 1-2501 et seq., the DCHRA and the D.C. Wage and Hour Law, 32 D.C. Code 1001 et seq.

5.  Venue is proper.  The causes of action arose substantially

from events taking place in Washington, D.C.

FACTUAL BACKGROUND

6. Ms. Powell began working for the American Red Cross on November 15, 2004. Her office location was 2025 E. Street, N.W., Washington, D.C. 20006.

7. Ms. Powell began work as a Wellness Associate (Occupational Health Nurse).

8. Ms. Powell worked at a pay rate of aprox. $27.45 hr.

9. On 1-7-05, Jane Davis RN resigned and the Red Cross required Ms. Powell, as part of her duties, to put in additional time to take over Ms. Davis' former duties, in addition to continuing to perform in her own position. Ms. Powell had to perform substantial overtime to perform these duties.

10. During the period 1-7-05 through March 16, 2006, the Red Cross required Ms. Powell to put in at least 15 hours of work per week in addition to 40 hours of work a week to accomplish these duties, for which she did not receive overtime compensation due for this work.

11. By March 16, 2005, the Red Cross required Ms. Powell to put in additional time to take on, as part of her own duties, certain processing duties formerly performed in the Wellness Unit. These processing duties included processing OSHA reporting, Worker's Compensation Status Reports, ADA Work Accommodation and FMLA paperwork.

13. For the period March 16, 2005 through June 30, 2005, the Red Cross required Ms. Powell to perform at least 12-18 hours of

additional overtime work in addition to 40 hours of work a week to accomplish these additional new duties, for which she did not receive overtime compensation due for this work.

14.  Ms. Powell had to perform these new duties in addition to continuing to perform the duties assigned to her from Jane Davis.

15.  Therefore for the period March 16, 2005 through June 30, 2005, the Red Cross required Ms. Powell to perform at least 27-32 hours of work in addition to 40 hours of work a week.

16.  The Red Cross knowlingly did not pay Ms. Powell for her additional overtime work or pay her a comparable wage.

17.  By about May 11, 2005, Ms. Powell was informed that her position would be eliminated.

18.  By May 15, 2005, the Red Cross told Ms. Powell that she would have to take a new job in order to maintain employment with the Red Cross.

19.  The Red Cross represented to Ms. Powell that the title of the position was Wellness Nurse, although the new job was actually the Staff Health Nurse for Disaster Services.

20.  Ms. Powell shadowed the job and reported to the Red Cross that the job was not comparable as it involved expanded duties to her Occupational Health Nurse position and yet did not return expanded or comparable pay.

21.  In particular, the job required substantial expanded travel, working in harsh physical environments, managing worker's compensation and disability claims, establishing restrictions and clearances for employees among substantial expanded duties.  Ms. Powell stated that she could not accept the job without having

received the final salary and job analysis determination.

22. The result of this determination was that the new job should be paid at a higher pay grade resulting in at least $5,000 more per year. The Red Cross expected Ms. Powell to perform this new job as well as to continue to perform the duties assigned to her from Jane Davis and the processing duties formerly performed in the Wellness Unit she had been performing, for which she had been working overtime but had not been paid.

23. Ms. Powell opposed the Red Cross expecting her to perform these duties as well as the duties taken over before June (which had been performed by higher-paid caucasian employees) without a raise in pay. However, the Red Cross would not pay the new job and other duties at any additional pay rate.

24. The Red Cross then terminated Ms. Powell's employment effective 6-30-05, as per Carol J. Miller, and failed to pay any severance pay, despite her entitlement to severance pay.

25. The Red Cross then asked Ms. Powell to resign, when the Red Cross knew it was terminating her position.

26. At an exit interview, the Red Cross incorrectly stated that it had nothing to do with unemployment benefits. Yet the Red Cross later falsely stated to State of Maryland Department of Labor, Licensing and Registration, Division of Unemployment that Ms. Powell had quit the Red Cross because of personal reasons.

LIAIBILITY AND REQUESTS FOR RELIEF

Count I

THE AMERICAN RED CROSS' TREATMENT OF MS. POWELL WAS

DISCRIMINATION AND RETALIATION UNDER THE DCHRA

27.   Pursuant to the District of Columbia Human Rights Act
(DCHRA), DC Code 1-2501 et seq., it is unlawful to limit, segregate
or clasify employees so as to diminish their employment
opportunities or affect their status or job conditions, on account
of theirr race or reprisal or their exercise of raising or opposing
issues of discriminination or discussing issues related to their
complaints of discrimination or reprisal.

28.   By the above actions, paras. 17-26, the American Red
Cross discriminated and retaliated against Ms. Powell, in violation
of the DCHRA.

29.   The failure of the American Red Cross to employ Ms.
Powell for fulfillment of the position of Staff Health Nurse for
Disaster Services (or Wellness Nurse), and for the additional
duties she had been performing (previously performed by caucasian
workers), at the appropriate pay raise folowing her opposing her
discriminatory compensation for these duties constitued
discrimination and reprisal under the DCHRA.

30.   The offer of non-comparable employment (for Wellness
Nurse) at the same wages as Occupational Health Nurse for Ms.
Powell and its termination of her employment when she would not
accept these discriminatory and retaliatory terms constituted
discrimination and retaliation (for her opposing these
discriminatory pay terms) under the DHRA.

31.   Under the terms of the American Red Cross's own job
analysis, Ms. Powell lost continuing employment at the Red Cross at
the  rate of at least $73,000 year, her transportation allowance,

medical benefits and privileges.

32.   Ms. Powell has suffered emotional damages and pain and suffering.

33.   In June 2005, the Red Cross, terminated Ms. Powell and failed to pay Ms. Powell or offer Ms. Powell comparable wages in violation of the anti-discrimination and anti-reprisal provisions of the DC Human Rights Act.  Ms. Powell suffered monetary loss and emotional suffering.

**Count II**

THE AMERICAN RED CROSS' TREATMENT OF MS. POWELL WAS IN VIOLATION OF THE DC WAGE AND HOUR LAW

34.   Pursuant to the D.C. Wage and Hour Law, 32 D.C. Code 1001 et seq. it is unlawful for an employer to accept work in addition to 40 hours a week for non-exempt employees without paying overtime wages and time and one half the normal hourly rate.

35.   Pursuant to paras. 9-24 above, the American Red Cross assigned and permitted such duties yet failed to pay Ms. Powell overtime wages for said work in violation of the DC Wage and Hour Law.

36.   In addition, the American Red Cross is liable for liquidated damages in the amount of said upaid wages.


**Count III**

THE AMERICAN RED CROSS TORTIOUSLY BREACHED AN EXPRESS OR IMPLIED CONTRACT WITH MS. POWELL AND CONDUCTED A TERMINATION IN VIOLATION OF PUBLIC POLICY

37.   Pursuant in public policy or express or implied contract

with Ms. Powell, including the Red Cross Human Resources Manual, the Red Cross had a duty to pay Ms. Powell according to its own study, equivalently with co-workers and not to represent employment as comparable, which had substantial additional duties, including as defined in the Human Resources Manual.

38.    The American Red Cross, under the same law and regulations also had a duty to pay severance pay (equal to three weeks pay) and 1/2 transportation allowance ($900) upon termination of Ms. Powell's employment.

39.    Despite these duties, the Red Cross tortiously breached its duty to pay Ms. Powell according to its study and its duty to pay Ms. Powell severance pay and 1/2 transportation allowance upon her termination.

40.    Ms. Powell's termination and failure to extend employment at a fair wage was in violation of public policy as it was performed by the Red Cross for Ms. Powell's failure to accept a discriminatory wage or compensation

REQUESTS FOR RELIEF

WHEREFORE, Ms. Powell prays that this Honorable Court grant her judgment against the Defendant.

Pursuant to Count I, Ms. Powell respectfully requests:

(1)    Compensatory and punitive damages pursuant to the DCHRA for pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-penuniary losses for each count above, and for such amounts as may be awarded pursuant to the other causes of action

(2)    Injunctive and other relief as will prevent the American

Red Cross from discrimination in like manner in the future

(3)   The American Red Cross shall compensate Ms. Powell for all attorney's fees and costs, including interest thereon, in prosecuting these claims

(4)   Pecuniary Damages from June 30, 2005 to present in the amount of $73,000 year, her transportation allowance of $1,800/yr., medical benefits and privileges.


Pursuant to Count II, for violation of the DC Wage and Hour Law, Ms. Powell requests:

(1) payment for all hours at the overtime wage rate worked by Ms. Powell in excess of 40 hours per week for the American Red Cross during 1-17-05 through 6-30-05,

(2) liquidated damages in an amount equal to said amount in (1) above,

(3) punitive damages

(4) her reasonable attorney fees as provided under the Law,

(4) all other relief, including compensatory and punitive, as allowed under the Law.

(5)   Ms. Powell further requests that the Court grant any and all such other relief as may be deemed appropriate in the interest of justice.


Pursuant to Count III, for tortious breach of an express or implied contract with Ms. Powell and for termination in violation of public policy:

(1)   Pecuniary Damages from June 30, 2005 to present in the

amount of $73,000 year, her transportation allowance of $1,800/yr., medical benefits and privileges.

(2)    Severance Pay as described in the HR Manual

(3)    1/2 annual transportation allowance amounting to $900

Any other such relief as to which Ms. Powell may be entitled and which this Honorable Court may award.

<u>JURY DEMAND</u>

Ms. Powell hereby demands a jury on all issues triable by a jury.

Dated:   June 10, 2006              Respectfully submitted,

Tonia Powell
By Counsel

Brian C. Plitt, Esq.
Attorney at Law
Bar No. 408746
1239 C. St., SE, Ste. 4
Washington, DC  20003-2234
(202) 546-5493

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Amended Complaint was served by mailing a copy, postage prepaid, by first class mail this 10th day of June, 2006 to The American Red Cross, 2025 E. St., N.W., 9th Fl., Washington, DC  20006 (attn. John Bryan or Shari Crandall).

Brian C. Plitt

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA -- CIVIL DIVISION

TONIA POWELL                          *
13400 Daventry Way, Apt. O            *
Germantown, MD   20874                *
     Plaintiff,                       *
                                      *
v.                                    *
                                      *
AMERICAN RED CROSS                    *
2025 E. Street, N.W.                  *
Washington, DC   20006                *
     Defendant.                       *

```
RECEIVED
Civil Clerk's Office
JUN 0 9 2006
Superior Court of the
District of Columbia
Washington, D.C.
0004492-06
```

ORIGINAL COMPLAINT FOR DISCRIMINATION AND RETALIATION UNDER THE
DCHRA, VIOLATION OF THE DC FLSA, AND BREACH OF EXPRESS OR IMPLIED
CONTRACT

1.  Plaintiff Tonia Powell is a resident of Maryland at 13400 Daventry Way, Apt. O, Germantown, MD   20874.

2.  Defendant American Red Cross, upon information and belief, is a District of Columbia not-for-profit corporation, qualified to do business in the District of Columbia and has done business in the District of Columbia at all time material hereto.

3.  The American Red Cross provides relief services to distressed victims of disasters and helps prevent, prepare for, and respond to emergencies at the national and international levels. It may be served through the Office of the General Counsel, c/o John Bryan or Shari Crandall at its address:  2025 E. St., N.W., 9th Fl., Washington, DC   20006.

JURISDICTION

4.  This Court has jurisdiction over this action under DC Code 1-2501 et seq., the DCHRA and the D.C. Fair Labor Standards Act.

5.  Venue is proper.  The causes of action arose substantially from events taking place in Washington, D.C.

FACTUAL BACKGROUND

6.  Ms. Powell began working for the American Red Cross on November 15, 2004.  Her office location was 2025 E. Street, N.W., Washington, D.C.  20006.

7.  Ms. Powell began work as a Wellness Associate (Occupational Health Nurse).

8.  Ms. Powell worked at a pay rate of aprox. $27.45 hr.

9.  On 1-7-05, Jane Davis RN resigned and the Red Cross required Ms. Powell, as part of her duties, to put in additional time to take over Ms. Davis' former duties, in addition to continuing to perform in her own position.  Ms. Powell had to perform substantial overtime to perform these duties.

10.  During the period 1-7-05 through March 16, 2006, the Red Cross required Ms. Powell to put in at least 15 hours of work per week in addition to 40 hours of work a week to accomplish these duties, for which she did not receive overtime compensation due for this work.

11.  By March 16, 2005, the Red Cross required Ms. Powell to put in additional time to take on, as part of her own duties, certain processing duties formerly performed in the Wellness Unit. These processing duties included processing OSHA reporting, Worker's Compensation Status Reports, ADA Work Accommodation and FMLA paperwork.

13.  For the period March 16, 2005 through June 30, 2005, the Red Cross required Ms. Powell to perform at least 12-18 hours of additional overtime work in addition to 40 hours of work a week to accomplish these additional new duties, for which she did not

receive overtime compensation due for this work.

14.  Ms. Powell had to perform these new duties in addition to continuing to perform the duties assigned to her from Jane Davis.

15.  Therefore for the period March 16, 2005 through June 30, 2005, the Red Cross required Ms. Powell to perform at least 27-32 hours of work in addition to 40 hours of work a week.

16.  The Red Cross knowlingly did not pay Ms. Powell for her additional overtime work or pay her a comparable wage.

17.  By about May 11, 2005, Ms. Powell was informed that her position would be eliminated.

18.  By May 15, 2005, the Red Cross told Ms. Powell that she would have to take a new job in order to maintain employment with the Red Cross.

19.  The Red Cross represented to Ms. Powell that the title of the position was Wellness Nurse, although the new job was actually the Staff Health Nurse for Disaster Services.

20.  Ms. Powell shadowed the job and reported to the Red Cross that the job was not comparable as it involved expanded duties to her Occupational Health Nurse position and yet did not return expanded or comparable pay.

21.  In particular, the job required substantial expanded travel, working in harsh physical environments, managing worker's compensation and disability claims, establishing restrictions and clearances for employees among substantial expanded duties.  Ms. Powell stated that she could not accept the job without having received the final salary and job analysis determination.

22.  The result of this determination was that the new job

should be paid at a higher pay grade resulting in at least $5,000 more per year. The Red Cross expected Ms. Powell to perform this new job as well as to continue to perform the duties assigned to her from Jane Davis and the processing duties formerly performed in the Wellness Unit she had been performing, for which she had been working overtime but had not been paid.

23. Ms. Powell opposed the Red Cross expecting her to perform these duties as well as the duties taken over before June (which had been performed by higher-paid caucasian employees) without a raise in pay. However, the Red Cross would not pay the new job and other duties at any additional pay rate.

24. The Red Cross then terminated Ms. Powell's employment effective 6-30-05, as per Carol J. Miller, and failed to pay any severance pay, despite her entitlement to severance pay.

25. The Red Cross then asked Ms. Powell to resign, when the Red Cross knew it was terminating her position.

26. At an exit interview, the Red Cross incorrectly stated that it had nothing to do with unemployment benefits. Yet the Red Cross later falsely stated to State of Maryland Department of Labor, Licensing and Registration, Division of Unemployment that Ms. Powell had quit the Red Cross because of personal reasons.

LIAIBILITY AND REQUESTS FOR RELIEF

Count I

THE AMERICAN RED CROSS' TREATMENT OF MS. POWELL WAS DISCRIMINATION AND RETALIATION UNDER THE DCHRA

27. Pursuant to the District of Columbia Human Rights Act

(DCHRA), DC Code 1-2501 et seq., it is unlawful to limit, segregate or clasify employees so as to diminish their employment opportunities or affect their status or job conditions, on account of theirr race or reprisal or their exercise of raising or opposing issues of discriminination or discussing issues related to their complaints of discrimination or reprisal.

28.    By the above actions, paras. 17-26, the American Red Cross discriminated and retaliated against Ms. Powell, in violation of the DCHRA.

29.    The failure of the American Red Cross to employ Ms. Powell for fulfillment of the position of Staff Health Nurse for Disaster Services (or Wellness Nurse), and for the additional duties she had been performing (previously performed by caucasian workers), at the appropriate pay raise folowing her opposing her discriminatory compensation for these duties constitued discrimination and reprisal under the DCHRA.

30.    The offer of non-comparable employment (for Wellness Nurse) at the same wages as Occupational Health Nurse for Ms. Powell and its termination of her employment when she would not accept these discriminatory and retaliatory terms constituted discrimination and retaliation (for her opposing these discriminatory pay terms) under the DHRA.

31.    Under the terms of the American Red Cross's own job analysis, Ms. Powell lost continuing employment at the Red Cross at the rate of at least $73,000 year, her transportation allowance, medical benefits and privileges.

32.    Ms. Powell has suffered emotional damages and pain and

suffering.

33.  In June 2005, the Red Cross, terminated Ms. Powell and failed to pay Ms. Powell or offer Ms. Powell comparable wages in violation of the anti-discrimination and anti-reprisal provisions of the DC Human Rights Act.  Ms. Powell suffered monetary loss and emotional suffering.

### Count II

THE AMERICAN RED CROSS' TREATMENT OF MS. POWELL WAS IN VIOLATION OF THE DC FAIR LABOR STANDARDS LAW

34.  Pursuant to the DC Fair Labor Standards Law, it is unlawful to accept work in addition to 40 hours a week for non-exempt employment without paying overtime wages.

35.  Pursuant to paras. 9-24 above, the American Red Cross assigned and permitted such duties yet failed to pay Ms. Powell overtime wages for said work in violation of the DC Fair Labor Standards Act.

36.  In addition, the American Red Cross is liable for liquidated damages in the amount of said upaid wages.

### Count III

THE AMERICAN RED CROSS TORTIOUSLY BREACHED AN EXPRESS OR IMPLIED CONTRACT WITH MS. POWELL AND CONDUCTED A TERMINATION IN VIOLATION OF PUBLIC POLICY

37.  Pursuant in public policy or express or implied contract with Ms. Powell, including the Red Cross Human Resources Manual, the Red Cross had a duty to pay Ms. Powell according to its own study, equivalently with co-workers and not to represent employment

as comparable, which had substantial additional duties, including as defined in the Human Resources Manual.

38.    The American Red Cross, under the same law and regulations also had a duty to pay severance pay (equal to three weeks pay) and 1/2 transportation allowance ($900) upon termination of Ms. Powell's employment.

39.    Despite these duties, the Red Cross tortiously breached its duty to pay Ms. Powell according to its study and its duty to pay Ms. Powell severance pay and 1/2 transportation allowance upon her termination.

40.    Ms. Powell's termination and failure to extend employment at a fair wage was in violation of public policy as it was performed by the Red Cross for Ms. Powell's failure to accept a discriminatory wage or compensation

REQUESTS FOR RELIEF

WHEREFORE, Ms. Powell prays that this Honorable Court grant her judgment against the Defendant.

Pursuant to Count I, Ms. Powell respectfully requests:

(1)  Compensatory and punitive damages pursuant to the DCHRA for pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-penuniary losses for each count above, and for such amounts as may be awarded pursuant to the other causes of action

(2) Injunctive and other relief as will prevent the American Red Cross from discrimination in like manner in the future

(3)  The American Red Cross shall compensate Ms. Powell for all attorney's fees and costs, including interest thereon, in

prosecuting these claims

(4)  Pecuniary Damages from June 30, 2005 to present in the amount of $73,000 year, her transportation allowance of $1,800/yr., medical benefits and privileges.


Pursuant to Count II, for violation of the DC Fair Labor Standards Act, Ms. Powell requests:

(1) payment for all hours at the overtime wage rate worked by Ms. Powell in excess of 40 hours per week for the American Red Cross during 1-17-05 through 6-30-05,

(2) liquidated damages in an amount equal to said amount in (1) above,

(3) punitive damages

(4) her reasonable attorney fees as provided under the Act,

(4) all other relief, including compensatory and punitive, as allowed under the Act.

(5)  Ms. Powell further requests that the Court grant any and all such other relief as may be deemed appropriate in the interest of justice.


Pursuant to Count III, for tortious breach of an express or implied contract with Ms. Powell and for termination in violation of public policy:

(1)  Pecuniary Damages from June 30, 2005 to present in the amount of $73,000 year, her transportation allowance of $1,800/yr., medical benefits and privileges.

(2)  Severance Pay as described in the HR Manual

(3)   1/2 annual transportation allowance amounting to $900

Any other such relief as to which Ms. Powell may be entitled

and which this Honorable Court may award.


### JURY DEMAND

Ms. Powell hereby demands a jury on all issues triable by a

jury.

Dated:   June 8, 2006              Respectfully submitted,

                                   Tonia Powell
                                   By Counsel


                                   _____
                                   Brian C. Plitt, Esq.
                                   Attorney at Law
                                   Bar No. 408746
                                   1239 C. St., SE, Ste. 4
                                   Washington, DC  20003-2234
                                   (202) 546-5493

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA -- CIVIL DIVISION

TONIA POWELL                          *
13400 Daventry Way, Apt. O            *
Germantown, MD  20874                 *
        Plaintiff,                    *
                                      *
v.                                    *
                                      *
AMERICAN RED CROSS                    *
2025 E. Street, N.W.                  *
Washington, DC  20006                 *
        Defendant.                    *



FILED
CIVIL ACTIONS BRANCH
JUN 0 9 2006
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

4492

<u>ORIGINAL COMPLAINT FOR DISCRIMINATION AND RETALIATION UNDER THE
DCHRA, VIOLATION OF THE DC FLSA, AND BREACH OF EXPRESS OR IMPLIED
CONTRACT</u>

1.  Plaintiff Tonia Powell is a resident of Maryland at 13400 Daventry Way, Apt. O, Germantown, MD  20874.

2.  Defendant American Red Cross, upon information and belief, is a District of Columbia not-for-profit corporation, qualified to do business in the District of Columbia and has done business in the District of Columbia at all time material hereto.

3.  The American Red Cross provides relief services to distressed victims of disasters and helps prevent, prepare for, and respond to emergencies at the national and international levels. It may be served through the Office of the General Counsel, c/o John Bryan or Shari Crandall at its address:  2025 E. St., N.W., 9th Fl., Washington, DC  20006.

<u>JURISDICTION</u>

4.  This Court has jurisdiction over this action under DC Code 1-2501 et seq., the DCHRA and the D.C. Fair Labor Standards Act.

5.  Venue is proper.  The causes of action arose substantially from events taking place in Washington, D.C.

Case: 2006 CA 004492 B
DKT: CRAN/DCF

FACTUAL BACKGROUND

6.  Ms. Powell began working for the American Red Cross on November 15, 2004. Her office location was 2025 E. Street, N.W., Washington, D.C. 20006.

7.  Ms. Powell began work as a Wellness Associate (Occupational Health Nurse).

8.  Ms. Powell worked at a pay rate of aprox. $27.45 hr.

9.  On 1-7-05, Jane Davis RN resigned and the Red Cross required Ms. Powell, as part of her duties, to put in additional time to take over Ms. Davis' former duties, in addition to continuing to perform in her own position. Ms. Powell had to perform substantial overtime to perform these duties.

10.  During the period 1-7-05 through March 16, 2006, the Red Cross required Ms. Powell to put in at least 15 hours of work per week in addition to 40 hours of work a week to accomplish these duties, for which she did not receive overtime compensation due for this work.

11.  By March 16, 2005, the Red Cross required Ms. Powell to put in additional time to take on, as part of her own duties, certain processing duties formerly performed in the Wellness Unit. These processing duties included processing OSHA reporting, Worker's Compensation Status Reports, ADA Work Accommodation and FMLA paperwork.

13.  For the period March 16, 2005 through June 30, 2005, the Red Cross required Ms. Powell to perform at least 12-18 hours of additional overtime work in addition to 40 hours of work a week to accomplish these additional new duties, for which she did not

receive overtime compensation due for this work.

14. Ms. Powell had to perform these new duties in addition to continuing to perform the duties assigned to her from Jane Davis.

15. Therefore for the period March 16, 2005 through June 30, 2005, the Red Cross required Ms. Powell to perform at least 27-32 hours of work in addition to 40 hours of work a week.

16. The Red Cross knowingly did not pay Ms. Powell for her additional overtime work or pay her a comparable wage.

17. By about May 11, 2005, Ms. Powell was informed that her position would be eliminated.

18. By May 15, 2005, the Red Cross told Ms. Powell that she would have to take a new job in order to maintain employment with the Red Cross.

19. The Red Cross represented to Ms. Powell that the title of the position was Wellness Nurse, although the new job was actually the Staff Health Nurse for Disaster Services.

20. Ms. Powell shadowed the job and reported to the Red Cross that the job was not comparable as it involved expanded duties to her Occupational Health Nurse position and yet did not return expanded or comparable pay.

21. In particular, the job required substantial expanded travel, working in harsh physical environments, managing worker's compensation and disability claims, establishing restrictions and clearances for employees among substantial expanded duties. Ms. Powell stated that she could not accept the job without having received the final salary and job analysis determination.

22. The result of this determination was that the new job

should be paid at a higher pay grade resulting in at least $5,000 more per year. The Red Cross expected Ms. Powell to perform this new job as well as to continue to perform the duties assigned to her from Jane Davis and the processing duties formerly performed in the Wellness Unit she had been performing, for which she had been working overtime but had not been paid.

23. Ms. Powell opposed the Red Cross expecting her to perform these duties as well as the duties taken over before June (which had been performed by higher-paid caucasian employees) without a raise in pay. However, the Red Cross would not pay the new job and other duties at any additional pay rate.

24. The Red Cross then terminated Ms. Powell's employment effective 6-30-05, as per Carol J. Miller, and failed to pay any severance pay, despite her entitlement to severance pay.

25. The Red Cross then asked Ms. Powell to resign, when the Red Cross knew it was terminating her position.

26. At an exit interview, the Red Cross incorrectly stated that it had nothing to do with unemployment benefits. Yet the Red Cross later falsely stated to State of Maryland Department of Labor, Licensing and Registration, Division of Unemployment that Ms. Powell had quit the Red Cross because of personal reasons.

LIAIBILITY AND REQUESTS FOR RELIEF

Count I

THE AMERICAN RED CROSS' TREATMENT OF MS. POWELL WAS DISCRIMINATION AND RETALIATION UNDER THE DCHRA

27. Pursuant to the District of Columbia Human Rights Act

(DCHRA), DC Code 1-2501 et seq., it is unlawful ʟʋ limit, segregate or clasify employees so as to diminish their employment opportunities or affect their status or job conditions, on account of theirr race or reprisal or their exercise of raising or opposing issues of discriminination or discussing issues related to their complaints of discrimination or reprisal.

28. By the above actions, paras. 17-26, the American Red Cross discriminated and retaliated against Ms. Powell, in violation of the DCHRA.

29. The failure of the American Red Cross to employ Ms. Powell for fulfillment of the position of Staff Health Nurse for Disaster Services (or Wellness Nurse), and for the additional duties she had been performing (previously performed by caucasian workers), at the appropriate pay raise folowing her opposing her discriminatory compensation for these duties constitued discrimination and reprisal under the DCHRA.

30. The offer of non-comparable employment (for Wellness Nurse) at the same wages as Occupational Health Nurse for Ms. Powell and its termination of her employment when she would not accept these discriminatory and retaliatory terms constituted discrimination and retaliation (for her opposing these discriminatory pay terms) under the DHRA.

31. Under the terms of the American Red Cross's own job analysis, Ms. Powell lost continuing employment at the Red Cross at the rate of at least $73,000 year, her transportation allowance, medical benefits and privileges.

32. Ms. Powell has suffered emotional damages and pain and

suffering.

33.  In June 2005, the Red Cross, terminated Ms. Powell and failed to pay Ms. Powell or offer Ms. Powell comparable wages in violation of the anti-discrimination and anti-reprisal provisions of the DC Human Rights Act.  Ms. Powell suffered monetary loss and emotional suffering.

**Count II**

THE  AMERICAN  RED  CROSS'  TREATMENT  OF  MS.  POWELL  WAS  IN VIOLATION OF THE DC FAIR LABOR STANDARDS LAW

34.  Pursuant to the DC Fair Labor Standards Law, it is unlawful to accept work in addition to 40 hours a week for non-exempt employment without paying overtime wages.

35.  Pursuant to paras. 9-24 above, the American Red Cross assigned and permitted such duties yet failed to pay Ms. Powell overtime wages for said work in violation of the DC Fair Labor Standards Act.

36.  In addition, the American Red Cross is liable for liquidated damages in the amount of said upaid wages.


**Count III**

THE  AMERICAN  RED  CROSS  TORTIOUSLY  BREACHED  AN  EXPRESS  OR IMPLIED CONTRACT WITH MS. POWELL AND CONDUCTED A TERMINATION IN VIOLATION OF PUBLIC POLICY

37.  Pursuant in public policy or express or implied contract with Ms. Powell, including the Red Cross Human Resources Manual, the Red Cross had a duty to pay Ms. Powell according to its own study, equivalently with co-workers and not to represent employment

as comparable, which had substantial additional duties, including as defined in the Human Resources Manual.

38. The American Red Cross, under the same law and regulations also had a duty to pay severance pay (equal to three weeks pay) and 1/2 transportation allowance ($900) upon termination of Ms. Powell's employment.

39. Despite these duties, the Red Cross tortiously breached its duty to pay Ms. Powell according to its study and its duty to pay Ms. Powell severance pay and 1/2 transportation allowance upon her termination.

40. Ms. Powell's termination and failure to extend employment at a fair wage was in violation of public policy as it was performed by the Red Cross for Ms. Powell's failure to accept a discriminatory wage or compensation

REQUESTS FOR RELIEF

WHEREFORE, Ms. Powell prays that this Honorable Court grant her judgment against the Defendant.

Pursuant to Count I, Ms. Powell respectfully requests:

(1) Compensatory and punitive damages pursuant to the DCHRA for pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-penuniary losses for each count above, and for such amounts as may be awarded pursuant to the other causes of action

(2) Injunctive and other relief as will prevent the American Red Cross from discrimination in like manner in the future

(3) The American Red Cross shall compensate Ms. Powell for all attorney's fees and costs, including interest thereon, in

prosecuting these claims

(4)  Pecuniary Damages from June 30, 2005 to present in the amount of $73,000 year, her transportation allowance of $1,800/yr., medical benefits and privileges.

Pursuant to Count II, for violation of the DC Fair Labor Standards Act, Ms. Powell requests:

(1) payment for all hours at the overtime wage rate worked by Ms. Powell in excess of 40 hours per week for the American Red Cross during 1-17-05 through 6-30-05,

(2) liquidated damages in an amount equal to said amount in (1) above,

(3) punitive damages

(4) her reasonable attorney fees as provided under the Act,

(4) all other relief, including compensatory and punitive, as allowed under the Act.

(5)  Ms. Powell further requests that the Court grant any and all such other relief as may be deemed appropriate in the interest of justice.

Pursuant to Count III, for tortious breach of an express or implied contract with Ms. Powell and for termination in violation of public policy:

(1)  Pecuniary Damages from June 30, 2005 to present in the amount of $73,000 year, her transportation allowance of $1,800/yr., medical benefits and privileges.

(2)  Severance Pay as described in the HR Manual

(3)   1/2 annual transportation allowance amounting to $900

Any other such relief as to which Ms. Powell may be entitled and which this Honorable Court may award.

<u>JURY DEMAND</u>

Ms. Powell hereby demands a jury on all issues triable by a jury.

Dated:   June 8, 2006            Respectfully submitted,

Tonia Powell
By Counsel


Brian C. Plitt, Esq.
Attorney at Law
Bar No. 408746
1239 C. St., SE, Ste. 4
Washington, DC  20003-2234
(202) 546-5493



**BRIAN C. PLITT**
ATTORNEY AT LAW
1239 C STREET, SE
SUITE FOUR
WASHINGTON, D.C. 20003-2234

**TO:**

The American Red Cross
2025 E. St., N.W., 9th Fl.
Washington, D.C.  20006

Attn:  John Bryan
       Shari Crandall