IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TONIA POWELL
    Plaintiff,
    v.

Case No. 1:06CV1173
Judge Huvelle

AMERICAN RED CROSS
    Defendant.

TONIA POWELL'S RESPONSES TO DEFENDANT'S
FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION OF DOCUMENTS

RESPONSES TO INTERROGATORIES

Interrogatory No. 1: Describe in detail all duties you contend you were required to perform beginning on January 7, 2005 after Jane Davis, RN resigned from the Red Cross, and identify all persons with knowledge of the facts in your response and all documents which reflect, refer to and/or relate to the facts in your response.

Response: After the resignation of Jane Davis, I was told I had to take on additional duties done by Jane that were we equally performed before Jane left. I was located at the Wellness Unit located in the NW LL1-130 (lower level) of the National Headquarters of the American Red Cross. These duties included the following:

I physically cleaned the cots by hand, replaced paper linens, replaced paper pillow cases, cleaned all surfaces for the Blood Pressure station, cleaned the reclining chair in the Lactation Room, cleaned the Lactation Room, cleaned surfaces and tidyied the clinic rooms for medical supplies, stocked medical supplies in storage areas, cleaned the community area, balanced the height/weight scale, received, replaced and arranged educational and health literature on the book shelves and bulletin boards.

I put papers in files, labelled files and filed the files in file cabinets as required for AFES personnel and American Red Cross employees. I locked and unlocked the file cabinets.

These papers included absentee notes and return to work notices sent to the Red Cross from health care providers and notes and memos sent from employees or from Wellness Associates.

At the request of workers I typed information given by employees and the Wellness Unit into standard forms on the computer to begin Worker's Compensation claims. According to instructions, I sent electronic notices to injured workers when new information was received.

1.

I took sheets off the wall (daily logs) where people using the Wellness Unit would check off their usage of the various facilities (blood pressure, height/weight, use of sleep room, use of lactation room, First Aid treatment) counted the number of check marks for each facility, entered the totals into the computer. I regularly posted new sheets.

Keyed educational information into the computer. Walked educational papers regarding the Red Cross to the Jefferson Park Building.

When employees submitted return to work notices, I notified managers and client managment associates, I ordered medical supplies and non-medical supplies as requested from catalogs. I walked and distributed health literature throughout NHQ. On each floor, I maintained first aid boxes (each floor 4 wings), made sure medical supplies were up to date, checked the condition of the automatic electronic defibrulator (make sure it was locked--if unlocked I would reset the unit and replace pads).

I keyed the result of physical examinnations and evaluations onto a spreadsheet. I notified personnel when medical records were received. I requested submission of medical records for annual and deployment physical evaluations. I maintained records on the medical status of deployed personnel. I informed personnel and AFES personnel of next physical due, from previously prepared checklist.

I provided first aid, when needed. I distributed health information, information on the Employee Assistance Program. If there was a report of illness I would respond to the location and physically walk the person to Wellness, if necessary, or call 911.

I made sure the room was locked, locked file cabinets, prepared for the next day. I tidied up to the room.

Related documents are produced herewith.

Persons with knowledge of these facts, include Jane Davis (address not known), Anna Shearer (Red Cross), Ken Thiel (address not known), Roger Kingsley (Red Cross), Kay Walton (retired), Patti Byrns (deceased), Corinthia (Nikki) Sanderson (Red Cross).

2. <u>Describe in detail all additional duties you were required to undertake begining on January 16 [March 16], as alleged in your [Amended Complaint, and identify all persons with knowledge of the facts in your response and all documents which reflect, refer to and/or relate to the facts in your response</u>.

Answer: This Interrrogatory is believed to ask about the period after March 16, 2005, as stated in the Amended Complaint, and is therefore responded to on that basis.

2.

In addition to the above duties, I was required to take on more duties. These included:

Requesting medical records for International Disaster Services personnel, checking these records against checklist for deployment, maintaining the records files, typing and preparing interdepartmental communication with Patti Byrnes, Nikki Sanderson, CMA, obtaining medical information for International Disaster Services personnel.

I filled out forms on OSHA events, based from information from workers or employees, or from workers's compensation sheets, submitted these forms.

I received medical forms from employees requesting ADA work accomodations, relayed this information to HR and managers, received decisions from HR and managers, relayed their decision to employees.

I gave the FMLA representative access to medical information from the data base, if needed for her decision.

I received phone calls or emails from worker's compensation vendor. I set up a conference room to meet. I listened to his report of which claims had been settled, went over checklist of outstanding claims.

I received written SOP (Standard Operating Procedure) sheets, replaced old SOP's with new SOP's in binders in our office, three other offices and in file room. I responded to requests from Medical Director. I followed directions from Anna Shearer, Director of Employee benefits.

Any responsive documents are produced herewith.

Persons with knowledge of these facts include the persons identified in response to Interrogatory No. 1.

3. Describe in detail all overtime work you were required to perform from March 16, 2005 through June 30, 2005 as alleged in your complaint and identify any individuals who witnessed you working any overtime, and identify all persons with knowledge of the facts in your response and all documents which reflect, refer to and/or relate to the facts in your response.

Answer: The overtime work required to be performed for the time period March 16, 2005 through June 30, 2005 was the same work described in response to Interrogatories 1 and 2 above, as well as the work previously performed by Ms. Powell before Jan. 7, 2005. The estimated overtime was necessary to operate and maintain the 3 person Wellness unit.

Responsive documents are produced herewith.

3.

Persons with knowledge of these facts include Anna Shearer.

4. Describe any "substantial" expanded travel, working in harsh physical environments, managing workers' compensation and disability claims, establishing restrictions and clearances for eamployees and any other expanded duties you claim were to be required of you as a wellness nurse at the Red Cross, and identify all persons with knowledge of the facts in your response and all documents which reflect, refer to and/or relate to the facts in your response.

Response: My position at the Red Cross was titled Wellness Associate (Occupational Health Nurse). In that position, I did not have "substantial" expanded travel or the other expanded duties described in this Interrogatory. These were part of the job description of "Wellness Nurse," which was offered to me (this position was really the same as Staff Health Nurse for Disaster Services--the name of the position was changed, without notice to me).

Some of the major differences between the two jobs were that the Wellness Nurse III, (Staff Health Nurse) position involved 25-50% travel. This could be travel to disaster sites more than 50 miles from Washington, D.C. You had to be availaby to work non-standard hours and weekends. This was not part of the Wellness Associate poisition I had done. The harsh physical environments would include hurricane or earthquake sites, which was very different from the environment at headquarters. You had to develop restrictions and clearances for employees (and develop systems to support legal requirements and operations needs) which was diffent than the job of Wellness Associate where I checked documents against checklists and sent notifications. You had to work with Toxicology to econize envrionmental fators and stresses that may cause sickness. This was different from Wellness Associate, where I provided education materials.

The difference in job decriptions of these positions are described in the following provided documents:

1. Wellness Associate 5/02/00
2. Wellness Associate 2/27/01
3. Requisition 1836BR Occupational Health Nurse/ARC
4. Daily Activities for Wellness Associate 6/3/05
5. American Red Cross Wellness Program 6/10/05
6. Staff Health Activities
7. Service Area Staff Health Volunteer Consultant (per Brenna)
8. Forward email regarding Staff Health
9. DSHR GROUPS--Operations Management (Organization Chart)

Wellness Associate was classified as a Level II job with pay at aprox. $27.45/hr.
Staff Health Nurse was classified as a Level III job with at aprox. $30.46/hr. Level III. If about 40 hours were worked per

4.

allegedly violated the District of Columbia Human Rights Act, and identify all persons with knowledge of the facts in your response and all documents which reflect, refer to and/or relate to the facts in your response.

Response: The factual basis for this claim is that I was terminated from employment because I opposed and would not accept discriminatory compensation at less that the standard rate for performing the Staff Health Position. This is more fully described in the responses to Interrogatories 4 and 5 above.

9. Describe in detail the nature of the "emotional damages and pain and suffering" as alleged in paras. 32 and 33 of your complaint and "emotional pain and suffering, inconvience, mantal anguish, loss of enjoyment of life and other non-pecuinary losses" as stated in your requests for relief that you allege you suffered and/or any employee, representative, and/or agent of the Red Cross did, including but not limited, the symptoms you suffered and/or suffer, the date of those symptoms, and any treatment you sought due to any alleged emotional pain, mantal anguish, and/or loss of enjoyment; and as to such treatment, the name and address of the individuals/entities that provided the treatment, the dates of such treatment, and the reason you sought treatment, and identify all persons with knowledge of the facts in your response and all documents which reflect, refer to and/or relate to the facts in your response.

Response: I have had the burden of enduring an injustice while working at the Red Cross and since then. I have felt intimidated, humiliated by the Red Cross' failure to pay me properly and to thereby deny me proper economic compensation, advancement and professional development. This has humiliated me and caused me anxiety because these actions are in direct violation of the Red Cross stated policies and as written in the Human Resource Manual.

I have cried privately and have felt very frustrated toward the Executive Human Resource Personnel, including Rick Pogue, Al Vinson, Carol Miller, Andrea Longuillo, Jane Smith and the Director of Disaster Services Bill Malfalfera.

Despite this I have maintained my composure and performed my duties competently, while feeling anguished by my treatment.

The above individuals (Mr. Pogue, Mr. Vinson, and Ms. Miller) have directly acknowledged a difference in compensation, are familiar with both the Wellness Associate and Staff Health job responsiblities and have insisted that both positions are the "same" despite the job descriptions.

I was assured by Andrea Longuillo during the exit interview Red Cross did not have any authority to determine unemployment eligibility, but then was notified by the Maryland Unemployment Office that there was a discrepancy in reported termination.

7.

Response: There are no positions of employment identified in response to Interrogatory No. 17.

23. Identify every healthcare provider you have seen since January 1, 2000 through the present.

Response: This Interogatory is overbroad, burdensome and irrelevant and not reasonably calculated to lead to relevant information. Ms. Powell is not seeking damages for physical injury and has not consulted any healthcare provider for mental injury or condition. Please also see response to Request for Production No. 22.

24. Itemize all damages you seek in this case, describing in detail the manner in which the damages were calculated, and include in your response the identification of all persons with knowledge of your response.

Response: Addressing the D.C. Wage and Hour Section of the Amended Complaint, I have calculated an extimate of the unpaid overtime hours I worked during 1-7-05 to 6-30-05.

During 1-7-05 to 3-16-05, I was required to work an additional 15 hours overtime a week for 9 weeks making a total number of overtime of 135 hours during this time.

During 3-16-05 to 6-30-05, I was required to work the same 15 hours overtime and an additional 12 hours of overtime a week (for at total of 27 hours of overtime a week) during this 14 week period, making a total number of overtime of 378 hours during this period. 135 added to 378 equals 513 total overtime hours during the entire period 1-7-05 to 6-30-05. The regular hourly rate of my compensation was $27.45. When this is converted to the overtime rate of $41.27 (time and one half), multiplied by the total number of overtime hours worked (513), this equals $21,122.77. This is then doubled to account for the required equal liquidated damages recovery for failure to pay overtime wages, this results in a total amount due for overtime work by me of $42,245.55 during my employment.

Uner the District of Columbia Human Rights act and common law, Amended Complaint Counts I and III, I also assert causes of action requesting damages for retaliatory and discriminatory wrongful termination and loss of continued employment at the Red Cross. These damages equate with the dollar value of continued employment for me from the date of termination to present. Under the statute and common law I also seek an unlimited amount to be determined by the jury or judge for emotinoal damages for mental anguish, embarrassment, humiliations, anxiety. D.C. Code 1-2501 et seq.

Recovery under the lost wage calculation would not necessarily end after one year, but would continue to year by year.

Assuming only a normal work week and no overtime, just one

12

year's calculation of lost wages would equal about $63,026 for the Staff Health Nurse (Wellness Nurse) position. If however, I had worked overtime at the same pace and rate I had performed during the 7 1/2 months before termination, then I would be entitled to compensation for earnings during that year of an estimated $91,419. I would also have been entitled to compensation for transportation allowance of 840.00.

I believe that I was entitled to severance pay for elimination of my position. Under the Severance Rules, I was entitled to three weeks normal pay. I estimate this to be about $3294 ($27.45 hour times 40 hours times three weeks).

25. Identify each and every individual not presently identified, who has personal knowledge of the allegations in plaintiff's complaint and identify all persons with knowledge of the facts in your response and all documents which reflect, refer to and/or relate to your response.

Response: There are no other such individuals or documents at this time.

RESPONSES TO REQUESTS TO PRODUCTION

1. All documents identified or relied upon in formulating your responses to the Red Cross' first set of interrogatories.

Response: Responsive documents are produced herewith.

2. All documents which reflect and/or relate to your allegations that the Red Cross discriminated against you.

Response: Responsive documents are produced herewith.

3. All documents which reflect and/or relate to your allegations that the Red Cross allegedly caused you to experience emotional damages, pain and suffering, mental anguish, and/or loss of enjoyment of life.

Response: Responsive documents are produced herewith.

4. All documents, including e-mails, letters, and any other correspondence (or any personal notes relating to telephone conversations) between the Red Cross (and any of its employees) and you regarding your allegations in your complaint.

Response: Responsive documents are produced herewith.

5. The resume of any expert you intend to use at trial.

Response: At this time, there are no such documents.

October 4, 2006

_____
Brian C. Plitt, Attorney at Law
1239 C. St., SE, Ste. 4
Washington, D.C.  20003
(202) 546-5493
Representative for Ms. Powell

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Responses to Defendant's Interrogatories and Requests for Production were served on the Defendant by hand delivery to: Constantinos G. Panagopoulos, Balland Spahr Andrews & Ingersoll, LLP, 601 13th Street, N.W., Suite 1000 South, Washington, D.C. 20005.

_____
Brian C. Plitt

17

    I hereby state under penalty of perjury that the foregoing answers to interrogatories are true and correct to the best of my knowledge, information and belief. Executed this 3rd day of October, 2006.

*Tonia Powell* 10-3-06
_____
Tonia Powell