IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TONIA POWELL, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 1:06CV1173 (ESH) |
| v. | ) | |
| | ) | |
| AMERICAN RED CROSS, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## THE AMERICAN RED CROSS'S STATEMENT OF DISPUTED FACTS

The Red Cross submits the following statement of disputed facts. The Red Cross's disputed facts correspond to the paragraphs set forth in plaintiff's statement of material facts.

1.      The Red Cross does not dispute Ms. Powell's Statement of Fact ("SOF") number 1.

2.      The Red Cross does not dispute SOF 2.

3.      The Red Cross disputes SOF 3 as incomplete. Although Ms. Powell may have performed some of the duties she listed, it is undisputed that Ms. Powell spent the majority of the time analyzing AFES medical records, performing health counseling in preparation for employees' deployments, and debriefing them upon return from deployment ("AFES work"). *See* Deposition of Tonia Powell, 66:8-77:21, 126:8-127:4; Pl.'s Mem. in Supp. of Mot. Summ. J. at p. 6. Relevant excerpts from Ms. Powell's deposition are attached as Exhibit 1. Once Jane Davis, another Wellness Nurse, resigned in January 2005, Ms. Powell spent more time on AFES work. *See* Ex. 1, Pl.'s Dep. 48:12-50:5. When Ken Theil, Wellness Manager, resigned in March

2005, Ms. Powell analyzed medical records, performed health counseling in preparation for employees' deployments, and debriefed them upon return from deployments. *See id.* 55:3-59:21.

4.       There is no SOF 4.

5.       The Red Cross disputes that the Red Cross "assigned Ms. Powell virtually all the duties" that Ms. Davis performed prior to her resignation. Rather, the Red Cross states that after Ms. Davis' departure, Mr. Thiel assumed some of Ms. Davis' duties and the Red Cross shifted other duties to Vicki Fleming, the Benefits Administrator. *See* Deposition of Anna Shearer, 55:18-57:13, 94:15-95:22. Relevant excerpts of Ms. Shearer's deposition testimony are attached as Exhibit 2. Regardless, it is undisputed that after Ms. Davis resigned, Ms. Powell's task of analyzing AFES medical records, performing health counseling, and briefing and debriefing increased. *See* Ex. 1, Pl.'s Dep. 128:13-129:19.

6.       There is no SOF 6.

7.       The Red Cross disputes that SOF 7 is material or even relevant because whether or not the Red Cross used contract employees has no bearing on whether an employee is exempt from overtime. The Red Cross disputes that it "routinely" used contract employees to fill vacant positions in the Wellness Unit. Rather, the Red Cross hired contract employees as needed. *See* Ex. 2, Shearer Dep. 40:11-41:1. The contract employees did not perform all the duties assigned to the Wellness Nurse, but, rather, assisted in duties such as providing first-aid to employees who walked in the Wellness Unit and administering flu shots. *See id.* 20:18-21:21.

8.       The Red Cross disputes that SOF 8 is material or even relevant because whether or not the Red Cross used contract employees has no bearing on whether an employee is exempt from overtime. Moreover, the Red Cross disputes that contract employees performed all of the duties assigned to Ms. Powell as a Wellness Nurse. *See id.*

9.      The Red Cross disputes SOF 9.  The Red Cross considered the existing workload of the Wellness Unit at the time Ms. Davis resigned and the possibility of shifting duties out of the Wellness Unit.  It is undisputed that the Red Cross assigned some duties performed by Ms. Davis to Ms. Powell such as the analysis of medical records for AFES deployment.  *See* Ex. 1, Pl.'s Dep. 48:12-50:5.  Other duties were assigned to Mr. Thiel and Ms. Fleming.  *See* Ex. 2, Shearer Dep. 55:18-57:13, 94:15-95:22.

10.      The Red Cross disputes SOF 10.  *See* response to SOF 9.

11.      The Red Cross disputes SOF 11 for the reasons set forth in response to SOF 9. The Red Cross admits that it expected Ms. Powell to perform the duties that the Red Cross assigned to her, including any duties it assigned to her that Ms. Davis performed.  *See* Ex. 2, Shearer Dep. 82:11-82:17.  The Red Cross did not expect Ms. Powell to perform all duties that Ms. Davis performed.  *See id.* 55:18-57:13, 94:15-95:22.

12.      The Red Cross disputes that Ms. Powell worked 15 hours in excess of forty hours a week after Ms. Davis resigned.  The Red Cross disputes plaintiff's claim regarding the amount of overtime she worked.  Ms. Powell's own deposition testimony contradicts this allegation.  Ms. Powell claimed that she worked, at most, 10 hours of overtime after both Ms. Davis and Mr. Thiel resigned.  *See* Ex. 1, Pl.'s Dep. 377:3-378:8.  Other evidence suggests that Ms. Powell worked little to no overtime.  In an April 2005 email, Ms. Powell claims that she typically left work at 4:30 p.m.  *See* Email from Powell to Hershman, dated April 7, 2005, attached as Exhibit 3; *see also* Ex. 1, Pl.'s Dep. 377:7-377:9.   At the time Ms. Shearer directly supervised Ms. Powell, Ms. Shearer never saw Ms. Powell working after 5:30.  *See* Ex. 2, Shearer Dep. 98:3-98:20.  The Red Cross's security log does show any activity for Ms. Powell after 5:30 p.m.  *See* Red Cross security log, attached as Exhibit 4.

13.    The Red Cross disputes Ms. Powell's characterization of SOF 13.  Ms. Shearer stated that she was not aware that Ms. Powell worked over forty hours a week, but that Ms. Powell may have worked overtime.  *See id.* 60:1-60:12.

14.    The Red Cross does not dispute this fact.  The Red Cross does not keep timesheet records relating to the hours worked by exempt employees.

15.    The Red Cross does not dispute that from November 2004 to March 2005, the Red Cross was not aware of the exact number of hours per week Ms. Powell worked.  *But see* response to SOF 12.

16.    The Red Cross does not dispute SOF 16.

17.    The Red Cross disputes SOF 17 as a conclusion of law and not a statement of fact.  The Red Cross also disputes SOF 17 because plaintiff mischaracterizes the record.  Ms. Powell did exercise discretion in the course of her employment.  Plaintiff's citation to her deposition testimony relates to duties that were collateral to her analysis of AFES and International Services records.  Further, other deposition testimony clarifies the nature of her AFES and International Services duties set forth in her interrogatory responses.  It is undisputed that plaintiff exercised discretion in the course of performing these tasks.  *See* Ex. 1, Pl.'s Dep. 36:19-39:1, 63:17-66:4, 76:10-82:1; documents and correspondence relating to International Services screenings, attached as Exhibit 5; relevant emails, attached as Exhibit 6.

18.    The Red Cross does not dispute that in 2005, the Red Cross implemented the results of its Core Services Analysis that took place from 2004 to 2005.  In May 2005, the Red Cross made the decision to close the Wellness Unit.  *See* Email from Marty Evans, CEO, dated Feb. 9, 2005, attached as Exhibit 7; Email from Ms. Evans dated May 11, 2005, and attachment, attached as Exhibit 8.

19.    The Red Cross does not dispute that Ms. Powell performed the tasks the Red Cross assigned to her.

20.    The Red Cross does not dispute SOF 20.

21.    The Red Cross disputes SOF 21.  Ms. Shearer stated she was not aware that Ms. Powell worked overtime from November 2004 to March 15, 2005.  *See* Ex. 2, Shearer Dep. 60:1-60:5.  The Red Cross states that, from March 2005 to June 2005, it was aware Ms. Powell may have occasionally worked one or two hours per week or worked a half hour past her normal working hours of 7:30 a.m. to 4:30 p.m.  *See id*. 67:6-67:18, 98:9-99:7.

22.    The Red Cross disputes SOF 22.  The Red Cross's response to plaintiff's interrogatory 5 clearly set forth its methodology for classifying Ms. Powell's position as exempt.  *See* Def.'s Resp. to Pl.'s Interrog. # 5, attached as Exhibit 9.  The Red Cross also produced documents to plaintiff indicating which exemption applied to Ms. Powell's position.  *See* Job Documentation Tool, Employee Wellness Nurse II, attached as Exhibit 10.  Moreover, Ms. Miller testified as to the process by which the Red Cross classifies positions as exempt.  *See* Deposition of Carol Miller, 38:13-39:5, 56:4-56:18.  Relevant excerpts of Ms. Miller's deposition are attached as Exhibit 11.  In addition, the Red Cross supplemented its deposition testimony via an errata sheet.  *See* errata sheet for Miller deposition, attached as Exhibit 12.

23.    The Red Cross does not dispute SOF 23.  The Red Cross does not keep timesheet records relating to the hours worked by exempt employees.

Respectfully submitted,


  /s/    Constantinos G. Panagopoulos   
Constantinos G. Panagopoulos #430932
Ballard Spahr Andrews & Ingersoll, LLP
601 13th Street, N.W., Suite 1000 South
Washington, DC  20005
Tel:    (202) 661-2200
Fax:   (202) 661-2299

March 12, 2007                               *Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Tonia Powell, )<br><br>                        Plaintiff, )<br><br>        v. )<br><br>American Red Cross, )<br><br>                        Defendant. ) | Case No. 1:06CV1173 (ESH) |

## AMERICAN RED CROSS'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The American Red Cross (the "Red Cross") requests that this Court deny plaintiff's motion for summary judgment on Count II of her amended complaint for violation of the D.C. Wage and Hour Law. Plaintiff mischaracterizes the facts at issue and applies incorrect legal standards. The facts, taken in the light most favorable to defendant, demonstrate that Ms. Powell was exempt from overtime. Further, plaintiff is not entitled to liquidated damages. The relevant facts and background are set forth in the Red Cross's motion for summary judgment.

## ARGUMENT

Federal Rule 56 is not a procedural shortcut. Summary judgment is only appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying . . . [that evidence] . . . which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Johnson v. Dong Moon Joo*, No. Civ.A 01-

0004, 2006 WL 627154, at *18 (D.D.C. March 12, 2006). Once the movant points to the

absence of a genuine issue of material fact, the burden then shifts to the non-moving party to

come forward with specific facts sufficient to create a triable issue. *Celotex*, 477 U.S. at 324.

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a summary judgment

motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in [its] favor." *Id.* at 255.

Because of the way in which plaintiff mischaracterizes the facts in her motion for

summary judgment, there are clearly genuine issues of material fact in dispute with respect to

Ms. Powell's overtime claim. Taking the facts in the light most favorable to the Red Cross,

summary judgment cannot be found for Ms. Powell as her employment was exempt from

overtime. Moreover, plaintiff does not apply the correct legal standards. Consequently, Ms.

Powell is not entitled to summary judgment.

**I.     Ms. Powell's Employment Was Exempt from Overtime And, Therefore, Ms. Powell Is Not Entitled To Summary Judgment.**

**A.     The Red Cross May Properly Invoke an Exemption**.

Preliminarily, the Red Cross states that it may invoke an exemption to the application of

the D.C. Wage and Hour Law with respect to Ms. Powell's employment. In her motion, Ms.

Powell claims that the Red Cross cannot claim any exemption because it was unable to testify as

to which exemption the Red Cross used regarding Ms. Powell's employment, or what percentage

of her work consisted of exempt duties. Ms. Powell cites *Roney v. U.S.*, 790 F. Supp. 23, 26

(D.D.C. 1992), for this proposition.[1]  *Roney*, however, states that "[w]hen, as here, the employer claims that an employee is exempt from overtime provisions under the FLSA, the burden falls on that employer to prove that the employee falls within the claimed exemption."  *Id.*  Contrary to plaintiff's mistaken interpretation of the law, there is no prerequisite to claim that an employee's position is exempt from overtime.  Rather, when an employee makes out a case of an FLSA violation, the employer may use the exemptions as a defense to liability.  *See, e.g.*, *Danesh v. Rite Aid Corp.*, 39 F. Supp. 2d 7, 10 (D.D.C. 1999).  An employer, therefore, does not have to put forth specific evidence as to how it formally classified an employee as exempt to invoke an exemption to liability.  *See, e.g., Pellerin v. Xspedius Mgmt. Co.*, 432 F. Supp. 2d 657, 664-65 (W.D. La. 2006) (considering an exemption despite defendant's failure to plead it).  If a formal classification did occur, there is no requirement that a manager working for the employer know which exemption the employer used or what factors the employer considered, particularly when that information may not be accessible.

Moreover, Ms. Miller testified as to the general process by which the Red Cross classifies its employees in relation to the FLSA.  *See* Ex. 11, Miller Dep. 38:13-39:5.  Ms. Miller stated that M.J. Dillworth-Smith, the person who classified Ms. Powell's employment, is no longer employed at the Red Cross.  *See id.* 102:12-103:4.  In addition, the Red Cross produced documents indicating which exemption it used with respect to Ms. Powell's position.  *See* Ex. 10.  Further, the Red Cross's interrogatory responses set forth the way in which plaintiff's position was classified as exempt.  *See* Ex. 9, Def.'s Resp. to Pl.'s Interrog. # 5.  Finally, the Red Cross supplemented its deposition testimony via errata sheet.  *See* errata sheet, attached as Exhibit 12.

---

[1]     Moreover, as described in Section B.2., the regulations cited in *Roney* are now outdated.

Ms. Powell has alleged that the Red Cross violated the D.C. Wage and Hour Law because it did not pay her overtime.  The statute affords the Red Cross the defense that Ms. Powell was exempt from the provisions relating to overtime.

      B.     <u>Ms. Powell Was An Exempt Employee</u>.

Ms. Powell is not entitled to summary judgment on her D.C. Wage and Hour Law claim because she was an exempt employee.  *See* D.C. CODE ANN. § 32-1004(a)(1); *see also* 29 U.S.C. § 213(a)(1).[2]  To survive summary judgment, a defendant "must allege issues of disputed fact suggesting that" the employee is exempt.  *See Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 87 (D.D.C. 1998) (quoting 29 C.F.R. § 541.2 (1999) (as amended at 29 C.F.R. § 541.200 (2004))).  As set forth below, the Red Cross cannot only present facts "suggesting" that Ms. Powell's employment was exempt, it can establish conclusively that she was an exempt employee.

      1.     *Ms. Powell's employment fell under the professional exemption*.

Ms. Powell's employment was exempt under the professional exemption of the D.C. Wage and Hour Law and, therefore, she is not entitled to summary judgment for overtime compensation.  In a footnote to her motion, Ms. Powell claims, without any analysis, that the Red Cross cannot argue her employment fell under the professional exemption because her position only "required a registered nurse [sic] and a bachelor's degree in nursing or a related field."  Pl.'s Mem. in Supp. of Mot. Summ. J. p. 13 n.4.  Ms. Powell is wrong.  Ms. Powell's employment was exempt under the professional exemption precisely because the Wellness Nurse

---

[2]     The D.C. Wage and Hour Law is modeled after the FLSA and incorporates the FLSA regulations in the Code of Federal Regulations ("C.F.R.").  *See* D.C. CODE ANN. § 32-1004(a)(1).

II position required, *inter alia*, a registered nurse license. Indeed, throughout plaintiff's motion, she refers to her duties as "nursing duties."

A professional employee is an employee who is paid $455 or more a week on a salary basis, and works primarily in a job that requires advanced knowledge in a field of science. *See* 29 C.F.R. § 541.300. This "learned professional" position must perform a primary duty that meets a three-part test. The employee must: (1) perform work requiring advanced knowledge that involves the exercise of judgment and discretion, (2) in a field of science, (3) that is customarily acquired by a prolonged course of specialized intellectual instruction. *See* 29 C.F.R. § 541.301(a). Moreover, "[a]n employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances." 29 C.F.R. § 541.301(b).

An employee is considered a professional employee even though the employee performs non-professional duties. Courts not only look to the time an employee spent on professional activities, but also "that which is of principal importance to the employer." *Reich v. Wyoming*, 993 F.2d 739, 742 (10th Cir. 1993); *see Rutline v. Prime Succession, Inc.*, 220 F.3d 737, 742-43 (6th Cir. 2000) (concluding that the performance of collateral duties that do not require a license is not a basis for determining that an employee is not exempt from overtime statute). *See also Hills v. W. Paper Comp.*, 825 F. Supp. 936, 938 (D. Kan. 1993) ("Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the pertinent factors support such a conclusion.").

The Federal Regulations explicitly state that registered nurses "generally meet the duties requirements for the learned professional exemption." 29 C.F.R. § 541.301(e)(2). Moreover,

5

courts have acknowledged that registered nurses are exempt from overtime compensation laws because they are learned professionals.  *See, e.g.*, *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995) (noting that nursing is an occupation that falls under the learned professional exemption); *Bongat v. Fairview Nursing Care Ctr.*, 341 F. Supp. 2d 181, 187 (E.D.N.Y. 2004) (interpreting the New York state statute relating to employee compensation); *Richardson v. Genesee County Cmty. Mental Health Servs.*, 45 F. Supp. 2d 610, 615 (E.D. Mich. 1999).  An employee such as a registered nurse may still be exempt if the employee uses manuals to interpret information that can "be understood or interpreted only by those with advanced or specialized knowledge or skill."  29 C.F.R. § 541.704; *see, e.g.*, *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 526-27 (5th Cir. 1999) (finding that athletic trainers exercised discretion despite the use of treatment guidelines).

As a registered nurse, Ms. Powell was exempt from overtime compensation under the professional exemption.  First, Ms. Powell made more than $455 a week on a salary basis.  *See* Powell employment offer letter, attached as Exhibit 13.  Second, Ms. Powell worked in the field of medicine, nursing, and health care at the Red Cross.  Ms. Powell had a current registered nurse license, a Diploma of Nursing, over twenty years of nursing experience, and was in the process of obtaining a Bachelor's Degree in Health Care Administration.  *See* employment documents relating to Ms. Powell, attached as Exhibit 14.  In fact, Ms. Powell qualified for the Wellness Nurse II position and the Red Cross hired her for the position because she had a registered nurse license.  *See* Ex. 10; Ex. 2, Shearer Dep. 41:2-41:7.

Third, Ms. Powell spent the clear majority of her time at the Red Cross engaged in duties relating to her field of study in which she exercised discretion based on her knowledge.  Ms. Powell's work relating to AFES and International Services involved that which is of primary

6

importance to the Red Cross.  *See* Employee Manual, Policies 701.00-703.00, attached as Exhibit 15; Employee Manual, Policy No. 113.00, attached as Exhibit 16. A clear majority of Ms. Powell's daily activities involved the analysis of AFES medical records.  *See* Ex. 1, Pl.'s Dep. 127:2-127:4.  After Ms. Davis resigned, Ms. Powell's workload in this area increased.  *See id.* 128:13-129:19.  When Mr. Thiel resigned, Ms. Powell started reviewing medical records relating to International Services - another duty involving her knowledge of medicine and health care.  *See id.* 56:9-56:14.

In addition to providing first aid, Ms. Powell used her medical knowledge to review military medical guidelines to make determinations regarding the deployments of Red Cross employees to certain geographic locations.[3]  *See id.* 36:19-37:8, 63:17-66:4; Ex. 5; Ex. 6.  Ms. Powell understood the records that came in the form of lab results, radiology results, immunization records, and prescription drug information.  *See* Ex. 1, Pl.'s Dep. 326:10-326:15; Ex. 2, Shearer Dep. 44:3-44:12.  After her review, Ms. Powell made initial determinations with respect to whether employees were fit to be deployed.  *See* Ex. 1, Pl.'s Dep. 76:10-78:8.  Her supervisor never overturned her recommendations.  *See id.* 77:16-78:8.

Ms. Powell also counseled AFES and International Services candidates on health issues. Ms. Powell provided advice to an employee that was contrary to the advice the doctors provided to that person.  Specifically, Ms. Powell wrote:

> I am aware of the findings that describe the condition of your cardiac status and the military physicians feel the EKG is not necessary.  However, 40-501 regulation 2-18 states the following: ["]The causes for rejection for deployment: all valvular heart disease congenital, acquire, including those improve [sic] by surgery except mitral valve prolapse and bicuspid aortic valve.  These later [sic] two conditions are not reasons for rejection unless there is associate [sic]

---

[3] The guidelines are extensive and, therefore, the Red Cross refers the Court to Exhibits 11 and 12 which it submitted with its motion for summary judgment.

>  tachyarrhythmia, mitral regurgitation, aortic stenosis, insufficiency or
>  cardiomegaly.["]  The echo report conclusion is mild aortic valve insufficiency
>  and mitral valve regurgitation.  I really want to avoid any complications at the
>  CRC, I MUST insist you get the EKG prior to the scheduled deployment in
>  October 2005; if the military physician wants to wave [sic] the testing, it must be
>  documented.

*See* Email from Powell to [redacted], dated June 16, 2005, attached as Exhibit 6.  In another email, Ms. Powell advised an employee on dietary approaches to lowering cholesterol even though the cholesterol levels were not an issue for deployment at the time.  *See* Email from Powell to [redacted], dated Mar. 9, 2005, attached as Exhibit 6.[4]

Additionally, Ms. Powell was informed of the status of the employees who were deployed and remained involved in decisions regarding their health.  For example, Ms. Powell was directly involved in making decisions regarding the safe transport of a Red Cross employee who suffered a heart attack while deployed.  *See* Ex. 1, Pl.'s Dep. 37:4-39:1, 79:12-82:1.  Ms. Powell stated that she was assigned the task because the Red Cross deferred to her "medical knowledge to help guide them."  *See id.* 38:15-39:1.

Finally, Ms. Powell also participated in briefings and debriefings of deployed employees.  *See id.* 66:5-71:9, 332:14-334:11.  After reviewing medical records, Ms. Powell ensured that employees had their medications, provided health education regarding the destination, and notified them to contact Ms. Powell with any updates concerning their heath.  *See id.* 66:5-69:5.  When employees returned, Ms. Powell discussed any health issues with them, including any conflicts that may have occurred with any other Red Cross employees while deployed.  *See id.* 69:6-71:9.  She characterized these types of decisions as involving "some strategy."  *Id.* 76:1-76:3.

---

[4]     The above two examples are two of many examples set forth in Exhibit 6.

Ms. Powell's position was exempt notwithstanding the fact that she used guidelines and performed other duties that may not have required a professional background. The analysis of the medical records and the comparison of data to the standards in the military guidelines required medical knowledge. *See id.* 76:10-78:8.[5] In short, Ms. Powell needed her medical knowledge when using the guidelines. Even though Ms. Powell performed additional duties at the Red Cross such as file maintenance that may not have required a registered nurse license, these duties were collateral to her AFES and International Services work.

It is clear that Ms. Powell not only had the medical background to understand the medical guidelines and records, but that her position required such knowledge. Ms. Powell also exercised discretion in the course of her duties such as offering her own medical advice. Ms. Powell's employment, therefore, was exempt under the professional exemption. Accordingly, this Court should deny plaintiff's motion for summary judgment.

2.    *Ms. Powell's employment was exempt under the administrative exemption.*

Ms. Powell is not entitled to summary judgment because her employment was exempt under the administrative exemption. Significantly, Ms. Powell cites to outdated FLSA regulations and related case law in her motion. The current 2004 regulations are materially different from the 1999 regulations to which Ms. Powell cites. The 1999 regulations required that the employee's primary duty relate to "management policies or general business operations of his employer." 29 C.F.R. § 541.2 (1999). The 1999 regulations stated that the employee must "customarily and regularly exercise[] discretion and independent judgment." *Id.* The current regulations, however, set forth the standard to determine if an employee is employed in bona fide administrative capacity. The employee must be:

---

[5]    *See also* Exhibit 12 to Def.'s Mot. Summ. J.

9

> Compensated on a salary or fee basis at a rate of not less than $455 . . . [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200 (2004).

Based on the correct legal standard, Ms. Powell's position at the Red Cross fell under the administrative exemption and, therefore, Ms. Powell is not entitled to summary judgment. First, it is not disputed that the Red Cross paid Ms. Powell on a salary basis and that she made over $455 a week. *See* Ex. 13.

Second, Ms. Powell performed a primary duty that was "directly related to assisting with the running or servicing of the business" as distinguished from an employee who works on a "manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a); *see also Robinson-Smith v. Gov't Employees Ins. Co.*, 323 F. Supp. 2d 12, 22-23 (D.D.C. 2004). Ms. Powell claims that she did not perform duties that directly related to the business of the Red Cross because her duties involved carrying out the "day-to-day policies" of the Red Cross. Pl.'s Mem. in Supp. of Mot. Summ. J. at 11. Plaintiff then cites to case law in an attempt to support the proposition that an employee who engages in the day-to-day operations of the employer's business is employed in a production capacity rather than an administrative capacity. *See id.* Contrary to plaintiff's contentions and reliance on these cases, this Court has concluded that the 2004 revisions to the FLSA regulations have "moved away from this administrative/production dichotomy in the context of the services industries." *Robinson-Smith*, 323 F. Supp. 2d at 23 n. 6 (internal quotations marks and citations omitted). An employee, therefore, is not required to manage a business, hire or fire employees, or discipline other employees to be deemed an administrative employee. Instead, an employee may perform work

10

that directly relates to the employer's business if the employee is responsible for executing or carrying out the employer's policies. *Robinson-Smith*, 323 F. Supp. 2d at 22-23; *see also Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 518 (6th Cir. 2004). Ms. Powell has conceded that her job was to carry out Red Cross policies.

While Ms. Powell only worked on a segment of the Red Cross's business, she still performed work that directly related to the Red Cross's operations. Courts have held that an employee may fall under the administrative exemption if the employee's work only affects a portion of the employer's business. *See, e.g.*, *Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 541-43 (7th Cir. 1999). Similar to the plaintiff in *Piscione*, Ms. Powell served as a primary contact for the Red Cross with its employees and facilitated the Red Cross's AFES and International Services programs. *Id.* ("These activities . . . clearly affected the policies of both [the employer] and its clients. His work required him not only to collect and enter data, but also to analyze it and provide clients with suggestions about how to solve any problems that arose. Therefore, [plaintiff] qualifies for the administrative exemption.").

It is undisputed that Ms. Powell spent the majority of her time analyzing medical records relating to AFES deployments. As Ms. Powell stated, her work at the Red Cross was "health nursing in a non-industrial setting." *See* Ex. 1, Pl.'s Dep. 33:17-33:18. The medical clearance and health counseling of AFES and International Services employees is instrumental to the work of the Red Cross. *See* Ex. 15; Ex. 16. Without medical clearance, the individuals could not be deployed and the Red Cross would not be able to complete its mission. *See* Ex. 15; Ex. 16. Ms. Powell's duties involved the servicing of the Red Cross's business and, therefore, her duties directly related to the business of the Red Cross.

11

Third, Ms. Powell exercised discretion in the course of her employment with respect to "matters of significance." 29 C.F.R. § 541.202(a). The term "matters of significance" means "the level of importance or consequence of the work performed." *Id.* Ms. Powell again used the wrong legal standard in her motion. She cites to the outdated regulations and states that the employer must prove that the employee "customarily and regularly exercise[d] discretion and independent judgment." Ms. Powell claims that the Red Cross could not establish the exact amount of time Ms. Powell spent on a given task.[6] In doing so, Ms. Powell cites to *D'Camera v. Dist. of Columbia*, 693 F. Supp. 1208, 1211 (D.D.C. 1988) which interpreted the then-current regulations. The FLSA regulations, however, were revised and do not require an employee to have "customarily and regularly" exercised discretion. Rather, the regulations require that the employee's primary duty include "the exercise or discretion and independent judgment with respect to matters of significance." To be exempt, the Red Cross is not required to establish that the majority of time Ms. Powell spent performing her primary duty involved the exercise of discretion. Rather, the Red Cross must establish that Ms. Powell exercised discretion with respect to matters of significance.

Ms. Powell claims that the majority of her duties were clerical and did not involve discretion. Ms. Powell, however, only cites to her interrogatory responses and her responses to the leading questions asked by her attorney during her deposition. Ms. Powell stated that her responses to her attorney's questions were not intended to narrow or change her previous deposition answers. *See* Ex. 1, Pl.'s Dep. 372:15-372:19.

---

[6] This point is irrelevant because Ms. Powell testified about the amount of time she spent on various duties for the duration of her employment.

As set forth below, during the course of her deposition, Ms. Powell testified about her AFES and International Services duties in greater detail and indicated that she consistently exercised discretion and independent judgment. Discretion and independent judgment "involve[] the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Although this element involves a factual consideration, the regulations state that relevant factors to determine whether the exemption applies include whether the employee "performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business . . . [and] whether the employee provides consultation or expert advice to management." 29 C.F.R. § 541.202(b). Moreover, employees may be exempt even though their recommendations are reviewed. *See* 29 C.F.R. § 541.202(c); *see also Piscione*, 171 F.3d at 536-37. Finally, this element of the administrative exemption requires more than "applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e); *see also, e.g.*, *Robinson-Smith*, 323 F. Supp. 2d at 25-26. Importantly, however, an employee may still be exempt from overtime if the employee uses manuals to interpret information that can "only be understood by those with advanced or specialized knowledge or skill." 29 C.F.R. § 541.704.

Ms. Powell exercised discretion and independent judgment. She counseled AFES and International Services personnel, made initial determinations as to whether an individual was fit to be deployed, and interpreted records to ascertain any problems an individual may have while deployed. *See* Ex. 1, Pl.'s Dep. 76:10-78:8; Ex. 15; Ex. 16.

Ms. Powell provided consultation and expert advice to the AFES supervisor. The fact that the supervisor reviewed Ms. Powell's determinations is inconsequential. Importantly, the

Red Cross did not overturn any of Ms. Powell's recommendations or determinations.  *See* Ex. 1, Pl.'s Dep. 77:16-78:8.

Ms. Powell did analyze the AFES and International Services records using military medical guidelines.  Nevertheless, Ms. Powell's "advanced or specialized knowledge or skill" as a registered nurse enabled her to understand the guidelines and apply contents of the medical records to the information in the guidelines.  *See id.* 36:19-37:8, 63:17-66:4, 76:10-78:8.  Ms. Powell acknowledged that her analysis involved individual employees who differed from one another.  *See id.* 288:19-289:3.  Unlike the plaintiffs in *Robinson-Smith*, Ms. Powell did not simply enter an identification number into a computer to limit the information she reviewed.  *See Robinson-Smith*, 323 F. Supp. 2d at 24-25 (finding that damage adjusters did not exercise discretion because they input a vehicle's "VIN" number into a computer which told the employees "almost everything there is to know about the vehicle involved").  The use of the guidelines does not, therefore, preclude a finding that Ms. Powell is exempt under the administrative exemption.  Accordingly, Ms. Powell's employment at the Red Cross was exempt under the administrative exemption and, therefore, her motion for summary judgment should be denied.

## II.    Ms. Powell Is Not Entitled To Liquidated Damages.

This Court should deny Ms. Powell's request for liquidated damages because the Red Cross did not act in bad faith and had reasonable grounds for believing that Ms. Powell's employment was exempt from overtime compensation.  Under the D.C. Wage and Hour Law, a court will not award liquidated damages if "the employer shows to the satisfaction of the court that the act or omission that gave rise to the action was in good faith and that the employer had reasonable ground for the belief that the act or omission was not a violation of this subchapter."

14

D.C. CODE § 32-1012(a); *see Ball v. Dist. of Columbia*, 795 F. Supp. 461, 467-68 (D.D.C.1992) (holding that employer did not act in bad faith and did not act unreasonably when it applied a "reasoned functional analysis" when attempting to comply with the FLSA).

The Red Cross's classification of Ms. Powell's position as exempt was not in bad faith or unreasonable. There is no evidence of bad faith on behalf of the Red Cross. Rather, all the evidence regarding the classification of Ms. Powell's position shows that the Red Cross made an honest attempt to comply with the applicable law. Further, the Red Cross reasonably attempted to comply with the FLSA when is classified Ms. Powell's position as exempt. The Red Cross relied on the Department of Labor standards and several other sources for guidance. *See* Ex. 9, Def.'s Resp. to Pl.'s Interrog. # 5. The Red Cross's Compensation Department evaluates each individual position at the Red Cross to determine whether the position is exempt. *See id.* The Red Cross evaluated the Wellness Nurse II position in 2004 - the same year it hired Ms. Powell. *See id.* This analysis considered the position's day-to-day duties, including the job function and scope and nature of the work involved, the level of knowledge required to perform the job, the type and amount of problem-solving required, the amount of discretion and latitude to be exercised, and the impact of errors on the Red Cross. *See id. Cf. Harris v. Dist. of Columbia*, 749 F. Supp. 301, 302 (D.D.C. 1990) (considering whether an employer reviewed the daily duties of a position in determining if an employee was exempt). The Red Cross also considered Survey Position Description Summaries to determine whether other companies classified the positions as exempt. *See id.*; Benchmark Summary for Wellness Nurse II, attached as Exhibit 17 The Red Cross, therefore, had a good faith and reasonable basis for finding that Ms. Powell's position was exempt.

In her motion, Ms. Powell claims she is entitled to liquidated damages because of the failure of Ms. Miller to identify the exemption upon which the Red Cross relied when it classified Ms. Powell's position.  In *Rainey*, the court noted that the failure of the corporate representative during deposition to rule out the application of the "patently unavailable professional exemption" is indicative that the employer failed to show it classified an employee as exempt on a reasonable basis.  *Rainey*, 26 F. Supp. 2d at 99 n. 4.  The facts in this case differ in several respects.  The professional exemption is not "patently unavailable" in this case.  Rather, Ms. Powell's employment at the Red Cross is exempt on that basis.  The Red Cross produced documents indicating the exemption used for Ms. Powell's position.  *See* Ex. 10.  The Red Cross provided a detailed interrogatory response providing information regarding the exemption.  *See* Ex. 9, Def.'s Resp. to Pl.'s Interrog. # 5.  Finally, the Red Cross supplemented its deposition testimony regarding the exemption.[7]  *See* Ex. 12.  As a result, under these circumstances, the failure of Ms. Miller to know whether the administrative or professional exemption applied to Ms. Powell's position is not indicative that the Red Cross acted in bad faith or unreasonably.

Ms. Powell attempts substantiate her claim for liquidated damages, albeit unsupported by any legal basis, by arguing that the Red Cross treated her unfairly as an employee by giving her more duties.  Such considerations, however, are irrelevant to whether the Red Cross acted in good faith and had a reasonable basis for determining that Ms. Powell was not eligible for overtime.

---

[7]    The person at the Red Cross who determined Ms. Powell's position was exempt, is no longer employed by the Red Cross.  *See* Ex. 11, Miller Dep. 102:12-103:6.  Ms. Miller spoke with the Red Cross's Compensation Unit prior to her deposition to gather information regarding the classification of Ms. Powell's position.  *See id*.

Because there is no evidence of bad faith, and the Red Cross had recently performed a comprehensive analysis of the Wellness Nurse II position and relied on reputable guidelines in doing so, Ms. Powell's demand for liquidated damages fails.

<u>Conclusion</u>

Ms. Powell mischaracterizes the facts and applies the incorrect legal standard in her motion for summary judgment.  The Red Cross's motion for summary judgment and its opposition to Ms. Powell's motion for summary judgment demonstrate that it is the Red Cross that is entitled to summary judgment.  Accordingly, Ms. Powell's motion for summary judgment should be denied.

Respectfully submitted,

  /s/    Constantinos G. Panagopoulos
Constantinos G. Panagopoulos #430932
Ballard Spahr Andrews & Ingersoll, LLP
601 13th Street, N.W., Suite 1000 South
Washington, DC  20005
Tel:    (202) 661-2200
Fax:    (202) 661-2299

March 12, 2007                    *Counsel for Defendant*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of March 2007, The American Red Cross's Statement of Disputed Facts and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment were electronically filed with the Clerk of the Court using the CM/ECF system, which shall send notification of filing to counsel of record below, and that, in addition, on March 12, 2007, true and correct copies of the foregoing documents were mailed, First-Class postage prepaid, to the following counsel of record:

>Brian C. Plitt
>1239 C Street, S.E. - Suite 4
>Washington, DC  20003
>
>*Counsel for Plaintiff*

>  /s/    Constantinos G. Panagopoulos
>Constantinos G. Panagopoulos