RB         UNITED STATES DISTRIC COURT
                    FOR THE
              DISTRICT OF COLUMBIA

- - - - - - - - - - - - -x
                          :
TONIA POWELL,             :
                          :
        Plaintiff,        :
                          :
    v,                    :
                          :
AMERICAN RED CROSS,       :
                          :
        Defendant.        :
                          :
- - - - - - - - - - - - -x

The deposition of CAROL MILLER, called for examination by counsel for the Defendant in the above-entitled matter, pursuant to notice, at the office of Miller Reporting Company, 735 8th Street, S.E., Washington, D.C., convened, pursuant to notice at 10:00 a.m., before David Harris, a notary public in and for the District of Columbia, when were present on behalf of the parties:

Page 2

1  APPEARENCES:
2    On behalf of the Defendants
     BRIAN PLITT, ESQ.
3    1776 K Street, N.W.
     Washington, D.C. 20005
4    (202) 452-7984
5    On behalf of the Plaintiff
     CONSTANTINOS G. PANAGOPOULOS, ESQ.
6    Ballard Spahr Andrews & Ingersoll, LLP
     601 13th Street, N.W.
7    Washington, D.C. 20005
     (202) 661-2202
8
   Also Present:
9    ROBBIN BOGGES
     Court Reporter
10
     David Harris
11   Notary Public
12
13           C O N T E N T S
14  WITNE                           PAGE
15  Carol Miller                      3
16
17           EXHIBITS
18  No. 2                            38
    No. 3                            46
19  No. 4                            48
    No. 5                            49
20  No. 6                            51
    Nos. 7-11                        88
21  No. 12                           93
    No. 13                           95
22  No. 14                          107
    No. 15                          114

Page 3

1           PROCEEDINGS
2  Whereupon,
3           CAROL MILLER
4  having been duly sworn by the Notary Public
5  testified as follows:
6       EXAMINATION BY COUNSEL FOR PLAINTIFF
7  BY MR. PLITT:
8    Q. All right. Good afternoon.
9    A. Good afternoon.
10   Q. We met this morning, and continuing with
11 the deposition, you've been sworn this morning.
12 Have you given your deposition before?
13   A. Yes.
14   Q. Okay. And for the record, can you state
15 your name?
16   A. Carol J. Miller.
17   Q. Okay. And how many times have you given a
18 deposition?
19   A. A couple.
20   Q. All right. Well, you've heard the
21 instructions this morning. Are there any questions
22 that you have at this time?

Page 4

1    A. No.
2    Q. Okay. Are you able to give accurate
3 testimony today about this case?
4    A. I morning
5    Q. Okay. Are you currently employed with the
6 Red Cross?
7    A. I morning
8    Q. Okay. Can you tell me your current
9 position with the Red Cross?
10   A. Yes. Senior Director, Client Services and
11 EEO.
12   Q. Is HR part of that job?
13   A. Yes, I work in the HR Department.
14   Q. Okay. And are you a supervisor?
15   A. Yes.
16   Q. Okay. And how long have you been in that
17 job?
18   A. In the current job since '99.
19   Q. And did you at any time supervise Ms. Anna
20 Shearer?
21   A. No. Oh, correction. Yes.
22   Q. Okay. And during what time was that?

Page 5

1    A. I was the Senior Vice President in '03.
2 And between June and December, 2003.
3    Q. And did you ever supervise Ms. Tanya
4 Powell?
5    A. No.
6    Q. And about how many people have you
7 supervised as a Senior Director of the current job
8 that you're in now?
9    A. Forty plus.
10   Q. And then while you were--while Ms. Powell
11 was employed at the Red Cross, who was--who reported
12 to you, directly to you at that time?
13      MR. PANAGOPOULOS: Objection as to form.
14      THE WITNESS: I have a director, a manager,
15 and a supervisor that reported directly to me.
16      BY MR. PLITT:
17   Q. Okay. And then before you came into this
18 job in '99, what was your job before that time?
19   A. I was a Manager, Armed Forces Emergency
20 Services.
21   Q. Within the Red Cross?
22   A. Yes.

Page 38

1  A. Yes.
2  Q. Okay. And that was sent by your
3  department?
4  A. Yes.
5  Q. Okay. All right. Thank you. So your
6  position is that that document is correct and the
7  information it provides?
8  A. Yes.
9  Q. Okay. All right. And we may have covered
10 it, but you didn't supervise the Wellness Unit at
11 any time Ms. Powell was employed with the Red Cross?
12 A. I did not.
13 Q. All right. Now, in terms of the Red
14 Cross's policy on overtime, which I believe you've
15 been designated to respond to, how--during the time
16 that Ms. Powell was employed at the Red Cross, how
17 did the Red Cross decide which employees were exempt
18 and non-exempt?
19 A. The Compensation Department would have
20 spoken with the business unit or the individual,
21 whether the supervisor or the individual to
22 determine what duties were being performed and

Page 39

1  looked at Job Documentation Tools and made a
2  determination on those two things and administered
3  then the test to determine exemption or not, and
4  then at the end of that test, the individual would
5  be told if they're exempt or non-exempt.
6  Q. And who made the decision as far as the
7  classification of Ms. Powell's position as Wellness
8  Nurse at the Red Cross?
9  A. Our Compensation Unit would have
10 made--would have reviewed the information and made
11 that determination.
12 Q. And which person in the Compensation Unit
13 made that decision?
14 A. I can't remember which person made it.
15 It's a number of people in that unit.
16 Q. How was the policy developed as far as
17 determining who is designated exempt or not exempt?
18     MR. PANAGOPOULOS: Objection as to form.
19     THE WITNESS: The Compensation Unit is
20 responsible for all policies in the Compensation
21 Section, so the Compensation Unit lead, Eugena
22 Blythe, would have been responsible for developing

Page 40

1  or reviewing those policies.
2     BY MR. PLITT:
3  Q. And what was the policy that was used to
4  determine whether or not or how Ms. Powell's
5  position was testified in terms of being exempt or
6  not exempt?
7     MR. PANAGOPOULOS: Did you mean classified?
8  You said testified. And there's also an objection
9  as to form.
10    MR. PLITT: Let me restate the question.
11    BY MR. PLITT:
12 Q. What was the policy in determining how Ms.
13 Powell's position was classified as exempt or not
14 exempt, her position as Wellness Nurse?
15    MR. PANAGOPOULOS: Objection as to form.
16 Asked and answered.
17    THE WITNESS: I believe we've produced that
18 policy that was in place at the time.
19    BY MR. PLITT:
20 Q. Well, I'm asking you as the representative,
21 what was the policy?
22    MR. PANAGOPOULOS: Objection. Asked and

Page 41

1  answered. Look, she can refer to a document if she
2  doesn't remember it. If she tells you that we've
3  given you the policy, that's the answer. I mean
4  its' in writing.
5     BY MR. PLITT:
6  Q. Well, then, can you please show me the
7  policy?
8     MR. PANAGOPOULOS: We produced the policy
9  to you. If you have documents you want us to take a
10 look at to see if that's the policy. I mean it was
11 pretty obvious at the time.
12    BY MR. PLITT:
13 Q. I'm asking you as the corporate
14 representative--
15    MR. PANAGOPOULOS: Okay. Do you have the
16 documents we produced to you?
17    MR. PLITT: If she has the documents, then
18 she can refer to those.
19    MR. PANAGOPOULOS: She doesn't have the
20 document with her. We produced documents to you.
21 She told you that we've given you a written document
22 that gives it. If you have the document, and you

Page 54

1  Q. No, but the question is what level of
2  points would result in a determination of exemption
3  or non-exemption?
4      MR. PANAGOPOULOS: Objection as to form.
5      THE WITNESS: I don't have a specific level
6  of points that I could share with you.
7      BY MR. PLITT:
8  Q. Is it your testimony that the person or
9  persons that prepared this document spoke with Ms.
10 Powell about her job duties before making
11 this--putting this document together?
12     MR. PANAGOPOULOS: Objection.
13 Mischaracterizes the testimony.
14     THE WITNESS: No, that's not my testimony.
15     BY MR. PLITT:
16 Q. Did they speak to Ms. Powell before
17 preparing this document?
18 A. I don't know.
19 Q. Okay. Do you have any evidence that they
20 did speak with Ms. Powell before preparing this
21 document?
22 A. No.

Page 55

1  Q. All right. Now, this document here says
2  indicate below which leveling chart will be used to
3  evaluate the job. Do you see that under part nine
4  in the last page?
5  A. I do.
6  Q. Can you explain what that means?
7  A. There are various--we have a job leveling
8  system, which allows people to have jobs in
9  different tracks, like career tracks, and these
10 would represent career tracks to level jobs.
11 Q. Can you explain what leveling means?
12 A. Moving through various levels of a
13 particular, like a registered nurse career track or
14 medical career track; in this case, a professional.
15 Q. Can you explain to me how leveling would
16 relate to classifying a job as exempt or non-exempt?
17 A. It would only be part of the
18 considerations. They would look at the Fair Labor
19 Standards Act and administer the appropriate
20 exemption test.
21 Q. All right. So this last page of the
22 document, this chart, would be part and only part of

Page 56

1  the determination as to whether a position was
2  exempt or not exempt in the Red Cross's view?
3  A. Yes.
4  Q. Okay. Now, can you show me anywhere in
5  that document how the exemptions under the Fair
6  Labor Standards Act or under the D.C. Wage and Hour
7  Act or Wage Revision Act were applied to determine
8  whether or not Ms. Powell's position was exempt or
9  not exempt?
10 A. I'm not a direct compensation practitioner,
11 so I'm going to give you the basic answer, which is,
12 these are the direct areas that the Fair Labor
13 Standards Act asks you to look at for duties
14 performed and make a determination based on a range
15 and that's what Compensation did using this tool to
16 determine the level of discretion, latitude, or
17 impact on the organization--those categories I read
18 earlier.
19 Q. Can you explain how the leveling chart
20 relates to the exemptions under the Fair Labor
21 Standards Act?
22     MR. PANAGOPOULOS: Objection. Asked and

Page 57

1  answered.
2      THE WITNESS: We have various job levels.
3  At the Red Cross, they look at those as well as the
4  latitude and, you know, moving through different
5  levels. It doesn't naturally correlate with an
6  exemption, but it's looked at in whole, along with
7  the feedback from the supervisor or someone familiar
8  with the position.
9      MR. PLITT: Let me take a look at the
10 document.
11     BY MR. PLITT:
12 Q. Okay. So this is the chart that you've
13 indicated was a factor in determining whether or not
14 Ms. Powell was an exempt or non-exempt employee;
15 correct?
16 A. Yes.
17 Q. All right. So if you follow with me on
18 this chart, looking at the top line, it says,
19 frequent use and general knowledge of industry,
20 practices, techniques, and standards, general
21 application of concepts and principles. Can you
22 explain to me which exemption under the Fair Labor

Page 102

1    MR. PANAGOPOULOS: You want five minutes?
2    MR. PLITT: Let's take a 10-minute break
3  and then I can give you the best idea. I can't--I
4  want to conclude as soon as I can as well, and I
5  think that's the best way to get it wrapped up.
6    MR. PANAGOPOULOS: All right. Okay.
7    [Recess.]
8    MR. PLITT: Just a few more questions.
9    MR. PANAGOPOULOS: Mm. What was that?
10   MR. PLITT: I said just a few more. I
11 guess I'm pretty happy about that one.
12   THE WITNESS: Before you get started, I was
13 thinking about one question you asked me. I'd like
14 to provide a little clarification, if that's
15 possible?
16   MR. PLITT: Sure.
17   THE WITNESS: You asked me if I had spoken
18 with MJ Dillworth Smith. And I responded no, which
19 was accurate. There wasn't a follow-up question,
20 but I did want to let you know what I didn't do any
21 follow up with her. She's no longer with the Red
22 Cross, so I was unable to do follow up with her to

Page 103

1  get specifics on her findings and her exemption
2  test. But I did talk with the compensation
3  department, both Karen Euler and Erica Johnson to
4  pull the documents to produce for today.
5    So I just wanted to put that information
6  out there for you.
7    BY MR. PLITT:
8    Q.  Okay. Did you--can you tell me what
9  attempts you made to try to reach Ms. Smith?
10   A.  None at all, since she was a former
11 employee.
12   Q.  Okay. Did you review Exhibit 6 at all with
13 the employees that you mentioned who were still with
14 the Red Cross?
15   A.  Yes.
16   Q.  Prior to your testimony today?
17   A.  Yes.
18   Q.  Okay. Now, I'm just saying this document
19 that Ms. Powell's name is not mentioned anywhere in
20 Exhibit 6?
21   A.  That's correct.
22   Q.  Now, what's your understanding as to when

Page 104

1  that document was created?
2    A.  The date that the analysis was completed,
3  according to this form, was February 23rd, 2004.
4    Q.  Okay. And do you know whether or not that
5  document was revisited or any subsequent analysis
6  was done for Ms. Powell after that document in terms
7  of whether she was performing exempt or non-exempt
8  duties?
9    A.  For the position or for Ms. Powell?
10   Q.  Well, for Ms. Powell.
11   A.  Not for Ms. Powell specifically.
12   Q.  Okay. And this position was not--this
13 analysis was not done for Ms. Powell specifically;
14 correct?
15   A.  Correct.
16   Q.  Do you think there was a subsequent
17 analysis, a generic analysis performed at a later
18 date?
19   MR. PANAGOPOULOS: Objection as to form.
20   THE WITNESS: If there was, we would have
21 included in our documents--I know there were a
22 number of compensation documents submitted.

Page 105

1    BY MR. PLITT:
2    Q.  All right. So you don't know of any others
3  other than what's been provided so far in the
4  discovery?
5    A.  That's correct.
6    Q.  Let me show what's going to be marked as
7  the next exhibit.
8        This is going to be number 14 for
9  identification.
10       [Whereupon, Corporate Designee
11       Exhibit 14 was marked for
12       identification.]
13   BY MR. PLITT:
14   Q.  I'm going to hand it to your counsel and
15 after he's reviewed it, I'd like to ask you a
16 question about it. You've been handed the document.
17 Could you take a look at it? It's several pages and
18 if you want to look at all the pages, I appreciate
19 it.
20   A.  Yes.
21   Q.  Okay. Looking at the first page of that
22 exhibit, can you tell me if you recognize what that