IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TONIA POWELL,<br><br>    *Plaintiff,*<br><br>  v.<br><br>AMERICAN RED CROSS,<br><br>    *Defendant.* | Case No. 1:06CV1173 (ESH) |

**THE AMERICAN RED CROSS'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT**

  The American Red Cross's (the "Red Cross") motion for summary judgment should be granted on all counts. Ms. Powell fails to demonstrate any dispute of material fact that would preclude the entry of summary judgment for the Red Cross. Indeed, as set forth in greater detail below, Ms. Powell manufactures irrelevant disputes of immaterial portions of undisputed facts, mischaracterizes the clear language of documents and testimony, and attempts to contradict her own sworn testimony via affidavit. Her desperate attempts to avoid summary judgment fail.

**ARGUMENT**

**I.  The Red Cross Is Entitled To Summary Judgment on Ms. Powell's DCHRA Claims.**

  A.  <u>Disparate Treatment Claims</u>.

  Ms. Powell's disparate treatment claims fail for several reasons. First, Ms. Powell has failed to raise any genuine issues of material fact. Second, her claims relating to salary are barred by the statute of limitations. Third, Ms. Davis and Ms. Powell were paid the same salary. Fourth, Ms. Powell cannot establish that she suffered an adverse action. Fifth, Ms. Powell

cannot present evidence that shows the Red Cross's reasons for its actions were a pretext for discrimination.

        1.    *Ms. Powell failed to establish any material facts in dispute.*

In her statement of material facts, Ms. Powell acknowledges that the Red Cross had a policy regarding employees' salaries and that the Red Cross followed that policy during its reduction-in-force. *See* Pl.'s Statement of Material Facts ¶¶ 43, 46, 47. Ms. Powell does not dispute that the salary ranges for the two positions at issue in this case overlapped. *See* Def.'s Statement of Undisputed Facts ¶¶ 44-45. The fact that the Red Cross told Ms. Powell that the Wellness Nurse III position had a higher market point than the Wellness Nurse II position is irrelevant. *See* Pl.'s Statement of Material Facts ¶ 47. As set forth in its summary judgment motion, the Red Cross followed its salary practice. Specifically, the Red Cross offered Ms. Powell the Wellness Nurse III position at the same salary because the salary fell within the salary range for the Wellness Nurse II position. *See* Def.'s Mot. Summ. J., Ex. 24. It is undisputed that the Red Cross's salary practice was in place at the time Ms. Powell was employed. It is also undisputed that the Red Cross followed this salary practice with respect to Ms. Powell. Ms. Powell has not established any genuine issue of material fact regarding her discrimination claim as related to the Red Cross's salary practice.

Further, Ms. Powell has not established any genuine issue of material fact regarding her claim for discriminatory termination. It is undisputed that the Red Cross terminated Ms. Powell's position as a result of the Core Services Analysis. *See* Def.'s Statement of Undisputed Facts ¶ 39.

2.     *Ms. Powell's salary claims are barred by the statute of limitations.*

Ms. Powell's claims for disparate treatment based on her salary as a Wellness Nurse II and the offer of the Wellness Nurse III position at the same salary are barred by the statute of limitations. Both claims are separate and distinct from the termination of Ms. Powell's employment. In fact, Ms. Powell acknowledged that the Red Cross terminated her employment as a result of the reduction-in-force and not on the basis of any discrimination. *See* Def.'s Mot. Summ. J., Ex. 19. As for the offer of the Wellness Nurse III position, Ms. Powell rejected the offer and considered suing the Red Cross by June 3, 2005. *See* Def.'s Mot. Summ. J., Ex. 6, Pl.'s Dep. 217:12-218:9. Ms. Powell filed her original complaint in the Superior Court of the District of Columbia on June 9, 2006, more than one year after the facts giving rise to her allegations. Her discrimination claims, therefore, are barred. *See* D.C. CODE ANN. § 2-1403.04.

3.     *There is no evidence of discriminatory practices relating to the Wellness Nurse II salary.*

There is no evidence, or even a basis for alleging, that the Red Cross discriminated against Ms. Powell. For whatever reason, Ms. Powell claims that Jane Davis made more money in a "previous position" than the salary which the Red Cross offered to Ms. Powell as a Wellness Nurse III in 2005.[1] Ms. Davis, however, had previously worked at the Red Cross as a volunteer prior to being hired as a Wellness Nurse II. *See* Davis employment documents, attached as Exhibit 1. Moreover, Ms. Davis was hired as a Wellness Nurse II at a salary of $55,016 in November 2003. *See* Davis offer letter, attached as Exhibit 2. The Red Cross raised Ms. Davis's salary to $57,096 in October 2004 - the month before it hired Ms. Powell. *See* Davis base pay

---

[1]     *See Stewart v. Ashcroft*, 211 F. Supp. 2d 166, 169 (D.D.C. 2002) ("[T]he nonmoving party may not rely solely on allegations or conclusory statements. . . . [r]ather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor." (internal citation omitted)).

change form, attached as Exhibit 3. This was the exact same salary that the Red Cross offered Ms. Powell when it hired her as a Wellness Nurse II in November 2004. *See* Def.'s Mot. Summ. J., Ex. 4. Ms. Powell's claim that the Red Cross paid Ms. Davis a higher salary because of her race is without merit.

        4.     *Ms. Powell did not suffer any adverse employment action*.

Ms. Powell cannot establish a *prima facie* case of discriminatory treatment regarding the offer of the Wellness Nurse III position because Ms. Powell did not suffer an adverse employment action. Ms. Powell claims that the adverse action at issue involved the failure to promote her and the assignment of different job responsibilities. *See* Pl.'s Opp'n Mem., p. 32. The Red Cross, however, did not fail to promote Ms. Powell. Instead, the Red Cross offered her a comparable position and Ms. Powell rejected that offer. *See* Def.'s Mot. Summ. J., Ex. 25. Moreover, as stated in the Red Cross's motion for summary judgment, "mere inconveniences and alteration of job responsibilities will not rise to the level of adverse action." *Moore v. Ashcroft*, 401 F. Supp. 2d 1, 20 (D.D.C. 2005) (citations omitted). There was no tangible change in Ms. Powell's employment or any objective harm to Ms. Powell whatsoever. As this Court has recognized, an increase in responsibilities is not an adverse action:

> A change in responsibilities, standing alone, does not render the transfer action "adverse" within the meaning of the statute. The law in this Circuit is well-settled that "purely subjective injuries, such as dissatisfaction with a reassignment" are not adverse employment actions . . . . Rather, the plaintiff must demonstrate both a significant change in responsibilities and objectively tangible harm.

*Bell v. Gonzales*, 398 F. Supp.2d 78, 96 (D.D.C. 2005) (internal citation omitted); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 13 (D.D.C. 2003) ("Courts have recognized that increases in workload or changes in responsibility are not adverse employment actions, but rather constitute only the ordinary tribulations of the workplace, which employees should expect.") (citations

4

omitted); *cf. Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (finding no adverse action when plaintiff's responsibilities did not decrease and he was given additional responsibilities); *Baloch v. Norton*, 355 F. Supp. 2d 246, 256-58 (D.D.C. 2005) (holding that plaintiff's failure to show "significantly diminished material responsibilities" prevented a finding of an adverse action). Approximately half of Ms. Powell's duties relating to the offered position would have been the same as her duties in the Wellness Nurse II position. *See* Def.'s Mot. Summ. J., Ex. 3, Shearer Dep. 88:5-88:19. Ms. Powell has not and cannot show that she suffered any harm that gives rise to the inference of an adverse action.

        5.    *Ms. Powell cannot establish the Red Cross's actions were a pretext of discrimination*.

Ms. Powell has not put forth sufficient evidence to show that the Red Cross's actions regarding her employment were pretext for discrimination. Because the Red Cross has put forth legitimate, non-discriminatory explanations for its actions, Ms. Powell must show that the reduction-in-force and offer of a salary pursuant to the Red Cross's salary practices were discriminatory. Ms. Powell has acknowledged that her position was terminated as a result of the Core Services Analysis. *See* Def.'s Mot. Summ. J., Ex. 19. Ms. Powell does not dispute that the Red Cross applied its salary policy with respect to her salary. *See* Pl.'s Statement of Material Facts ¶¶ 46-47. Further, aside from Ms. Powell's speculation, there is no evidence that Ms. Davis was paid more than Ms. Powell. Again, Ms. Davis previously volunteered at the Red Cross and later made the exact same salary as Ms. Powell. Also, Ken Thiel received a higher salary because he had a different position.[2] He was the supervisor of the Wellness Unit. *See*

---

2      With respect to her overtime claim, Ms. Powell claims that she only received the clerical duties that Mr. Thiel performed. *See* Pl.'s Opp'n Mem., p. 4. For her discrimination claims, she claims that the Red Cross assigned "substantial duties formerly performed by
(continued...)

Def.'s Mot. Summ. J., Ex. 3, Shearer Dep. 56:9-56:12. Ms. Powell, on the other hand, was never a supervisor. *See* Pl.'s Opp'n Mem., p. 13. She was not similarly situated with Mr. Thiel and the difference between the salaries of the two is wholly immaterial and irrelevant to any discrimination claim. *See, e.g.*, *Heasley v. Dist. of Columbia Gen. Hosp.*, 180 F. Supp. 2d 158, 171-72 (D.D.C. 2002); *Hollins v. Fed Nat'l Mortgage Ass'n*, 760 A.2d 563, 578 (D.C. 2000).

Similarly, Ms. Powell was not similarly situated with Diana Billack, who the Red Cross hired as a Staff Health Associate after Ms. Powell left the Red Cross. Ms. Billack held a Masters' Degree in Public Health while Ms. Powell had not yet completed her Bachelors' Degree in Nursing. *See* employment documents relating to Diana Billack, attached as Exhibit 4; Def.'s Mot. Summ. J., Ex. 32; *see also Sherrod v. Philadelphia Gas Works*, 57 Fed. Appx. 68, 74-75 (3d Cir. 2003) (stating that a salary difference is not enough to establish pretext, particularly when the plaintiff's successors have better educational backgrounds). Moreover, Ms. Billack's salary and the salary offered to Ms. Powell fell within the salary band for Wellness Nurse III.[3] *See* Def.'s Mot. Summ. J., Ex. 23. In short, Ms. Powell has completely failed to put forth any evidence that demonstrates the Red Cross's legitimate, non-discriminatory reasons regarding Ms. Powell's employment were false and that discrimination was the real reason for its actions. *See Hollins v. Federal Nat'l Mortgage Ass'n*, 760 A.2d 563, 571 (D.C. 2000); *see also Sullivan-Obst v. Powell*, 300 F. Supp. 2d 85, 95-96 (D.D.C. 2004) (concluding that the plaintiff

---

(...continued)
    caucasian supervisor Ken Thiel." *Id*. p. 34. This contradiction is indicative of Ms. Powell's constant misrepresentation of the facts.

[3]     The salary band of the Wellness Nurse III position ranged from $52,554.50 to $87,591.25. Ms. Powell was offered a salary of $57,096 and Ms. Billack was offered a salary of $68,016. *See* Def.'s Mot. Summ. J. Ex. 4; Billack employment offer letter, attached as Exhibit 5.

6

failed to rebut the employer's reasons and recognizing that the Court is not required to accept the plaintiff's conclusory allegations as true). There is no evidence that the Red Cross's actions were based on anything other than its Core Services Analysis or that its salary determinations were based on anything other than established methodology. Certainly, no evidence exists that even remotely indicates that the Red Cross based its decisions on Ms. Powell's race. Ms. Powell only speculates that the Red Cross engaged in discriminatory conduct and, therefore, her discrimination claims fail.[4]

    B.    <u>Retaliation Claim</u>.

The Red Cross is entitled to summary judgment with respect to Ms. Powell's retaliation claim because Ms. Powell failed to set forth any genuine issue of material fact regarding this claim. Ms. Powell does not dispute that she never filed any discrimination claim with the Red Cross. *See* Def.'s Statement of Undisputed Facts ¶ 57. As a result, the Red Cross is entitled to summary judgment regarding Ms. Powell's retaliation claim because Ms. Powell failed to set forth a *prima facie* case. Although Ms. Powell now claims that she opposed "what she believed to be a discriminatory rate of pay and refused to accept it," Pl.'s Opp'n Mem., p. 35, Ms. Powell testified that she never alleged any discrimination to anyone at the Red Cross prior to filing her lawsuit. *See* Def.'s Mot. Summ. J., Ex. 6, Pl.'s Dep. 220:2-220:9, 221:4-221:11, 309:11-310:1. As a result, it is undisputed that Ms. Powell did not participate in any protected activity. Additionally, in support of her retaliation claim, Ms. Powell claims that Ms. Davis was paid

---

[4]    The fact that an employee at the Red Cross informed the Maryland Unemployment Department that Ms. Powell voluntarily quit is immaterial to Ms. Powell's discrimination claim. The Red Cross determined that Ms. Powell quit because she did not accept the offered position. *See* Def.'s Mot. Summ. J., Ex. 25.

7

more than Ms. Powell as a Staff Health Nurse and as a Wellness Nurse II. As discussed above, these allegations are entirely false. Ms. Powell's retaliation claim fails.

**II.    The Red Cross Is Entitled To Summary Judgment on Ms. Powell's Overtime Claim.**

The Red Cross is entitled to summary judgment on Ms. Powell's claims under the D.C. Wage and Hour Law for two reasons. First, based on the undisputed facts, her position was exempt under the professional exemption. Second, based on the undisputed facts, her position was exempt under the administrative exemption.

    A.    <u>The Red Cross Is Entitled To Claim Exemptions Regarding Overtime</u>.

Ms. Powell argues that the Red Cross is precluded from claiming that she was exempt from overtime. Ms. Powell misinterprets case law in making her argument. There is no prerequisite to claim that an employee's position is exempt from overtime. Rather, when an employee makes out a case of an overtime violation, the employer may use the exemptions as a defense to liability. *See, e.g.*, *Danesh v. Rite Aid Corp.*, 39 F. Supp. 2d 7, 10 (D.D.C. 1999).

Moreover, Ms. Powell acknowledges that the Red Cross had a policy in place to determine whether employees were exempt. *See* Pl.'s Statement of Material Facts ¶ 10. Ms. Powell admits that the Red Cross classified the Wellness Nurse II position as exempt in 2004 - the year the Red Cross employed Ms. Powell. *See id.* ¶ 11. Ms. Powell also admits that the Red Cross classified Ms. Powell's position as exempt. *See id.* ¶ 5. Ms. Powell's contention that Ms. Miller could not identify the exemption upon which the Red Cross relied to classify Ms. Powell's employment as exempt is irrelevant and misleading.[5] Prior to Ms. Miller's deposition, the Red Cross produced documents to Ms. Powell indicating which exemption applied to her position.

---

[5]    Significantly, Ms. Powell's counsel never asked Ms. Miller during her deposition upon which exemption the Red Cross currently relies to argue that Ms. Powell's position was exempt at the time she was employed.

8

*See* Def.'s Opp'n Mem., Ex. 10.  After the deposition, the Red Cross supplemented its response to plaintiff's interrogatory and clearly set forth its methodology for classifying Ms. Powell's position as exempt.  *See* Def.'s Opp'n Mem., Ex. 9.  Finally, the Red Cross supplemented its deposition testimony via an errata sheet.  *See* Def.'s Opp'n Mem., Ex. 12.

    B.    <u>Professional Exemption</u>.

Ms. Powell was exempt under the professional exemption.  As in her motion for summary judgment, Ms. Powell cited to the outdated regulations in her opposition.[6]  Regardless, it is hard to imagine how Ms. Powell can claim that she did not work in a field of science when her position required a registered nurse license.  *See* Def.'s Mot. Summ. J., Ex. 2; *see also* 29 C.F.R. § 541.301(c).  It is also hard to imagine how she can make such a claim when she described her job as "health nursing in a non-industrial setting."  *See* Ex. 6, Pl.'s Dep. 33:17-33:18.  The regulations relating to the professional exemption explicitly state that registered nurses are generally exempt from overtime.  *See* 29 C.F.R. § 541.301(e)(2).  Moreover, in her opposition, Ms. Powell consistently described her job duties at the Red Cross as "wellness nursing duties."  Pl.'s Opp'n Mem., p. 13.  She stated that "[t]hese wellness nursing duties remained the core or 'primary' functions, Powell performed for the rest of her employment."  *Id*.  Further, the Red Cross hired Ms. Powell because she had a registered nurse license.[7]  Ms. Powell attempts to argue she is not exempt because she used medical guidelines to analyze various medical situations.  *Id*. at 25.  The use of guidelines, however, does not preclude a finding that her employment was exempt.  *See* 29 C.F.R. § 541.704; *see, e.g.*, *Owsley v. San Antonio Indep.*

---

[6]    The Red Cross addressed this issue in its opposition to Ms. Powell's motion for summary judgment.

[7]    The fact that Ms. Powell claims she was paid overtime in a previous position as a registered nurse is wholly irrelevant.

9

*Sch. Dist.*, 187 F.3d 521, 526-27 (5th Cir. 1999) (finding that athletic trainers exercised discretion despite the use of treatment guidelines). Ms. Powell used discretion to make medical decisions. *See* Def.'s Mot. Summ. J., Ex. 6, Pl.'s Dep. 36:19-39:1, 56:9-56:14, 63:17-71:9, 76:10-78:8, 127:2-127:4; Ex. 14; Ex. 15. Her employment, therefore, was exempt from overtime.

    C.    <u>Administrative Exemption</u>.

        1.    *Ms. Powell failed to establish any material facts in dispute*.

Ms. Powell misrepresents the record with respect to her duties while employed at the Red Cross. In her discovery responses, Ms. Powell set forth the duties which she performed. *See* Pl.'s Opp'n Mem., Ex. 2. During her deposition testimony, Ms. Powell clarified the duties which she performed as well as the percentage of time spent on various duties. Importantly, Ms. Powell specifically described the duties relating to AFES and the amount of time she spent on those duties.

> Q. I'm asking you to kind of, if you would, quantify for me which of these particular duties took most of your time.
>
> A. Most of my day was assigned to AFES personnel.
>
> Q. So it was dealing with the medical and certification issues that we were discussing earlier with --
>
> A. All the responsibilities related to AFES personnel, from briefing to debriefing, which included keeping track of where they are in their physical process, documentation of the medical records, working on the spreadsheet, meeting with AFES team manager, e-mails, telephone from AFES personnel.
>
> Q. What percentage of your day did the AFES component of your job take up?
>
> A. Probably 60 to 70 percent of the day.
>
> Q. What was the other 30 to 40 percent composed of?

>    A.    Doing blood pressure checks, cleaning the cot rooms -- you know they have rooms where people come in and they can lay down?
>
>    Q.    You told me that.
>
>    A.    Those were supplied with sheets, paper sheets and paper pillow cases -- making sure the lactation room was clean, filing workmen's compensation, doing the ergonomic assessments, filing, stocking of medical supplies, stocking of the first aid boxes that are throughout the campus, in addition the first aid box, the AED was right next to it, so communicating to the security that I did those checks and that they were done. They can go and re-lock the box, re-lock the first aid boxes, passing out any type of medical literature throughout the campus.
>
>    Q.    It sounds like you are describing everything else. Was everything else basically, I guess, equal in increments, so that you had your main duties dealing with AFES, and everything else took up some period of time?
>
>    A.    That's correct.

Def.'s Mot. Summ. J., Ex. 6, Pl.'s Dep. 126:8-128:6.

Now, however, Ms. Powell attempts to muddle which duties she performed in a desperate attempt to avoid summary judgment. *See* Pl.'s Statement of Material Facts ¶¶ 13, 14, 24. Ms. Powell, however, testified in her deposition that her work included analysis of medical records, performing health counseling in preparation for employees' deployments, and debriefing them upon return from deployment. *See* Def.'s Mot. Summ. J., Ex. 6, Pl.'s Dep. 66:8-77:21, 126:8-127:4. Ms. Powell cannot rely on a declaration submitted with a motion that contradicts her prior deposition testimony. *See, e.g., Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 8-9 (D.D.C. 2006).

    2.    *The administrative exemption applied to Ms. Powell.*

First, Ms. Powell again relies on outdated regulations. Second, Ms. Powell's duties were of primary importance to the Red Cross and Ms. Powell exercised discretion and independent judgment. Contrary to Ms. Powell's argument based on outdated regulations, even if Ms. Powell did not perform AFES work over fifty percent of the time, the fact that the AFES work was of

11

primary importance to the Red Cross is dispositive. *See* 29 C.F.R. § 541.700 ("The term 'primary duty' means the principal, main, major or most important duty that the employee performs. . . . [t]ime alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work."). Ms. Powell stated that "AFES was always important . . . . always came first." Def.'s Mot. Summ. J., Ex. 6, Pl.'s Dep. 145:15-145:19. The AFES work was clearly important to the Red Cross. *See* Def.'s Mot. Summ. J., Ex. 10; Ex. 13.

Ms. Powell mistakenly argues that she was not exempt because she did not create Red Cross policy. *See* Pl.'s Opp'n Mem., p. 15. An employee, however, is not required to manage a business, hire or fire employees, or discipline other employees to be deemed an administrative employee. Instead, an employee may perform work that directly relates to the employer's business if the employee is responsible for executing or carrying out the employer's policies. *Robinson-Smith*, 323 F. Supp. 2d at 22-23; *see also Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 518 (6th Cir. 2004). Ms. Powell has conceded that her job was to carry out Red Cross policies. *See* Pl.'s Mem. in Supp. of Mot. Summ. J., p. 11; Pl.'s Opp'n Mem., p. 15.

Ms. Powell did exercise discretion and independent judgment. Ms. Powell claims that she only reviewed medical records and did not analyze them. Ms. Powell also claims her AFES work "occurred within military guidelines" and was "informational." *See* Pl.'s Opp'n Mem., pp. 19-20. In her opposition, however, Ms. Powell stated that she "reviewed medical records, to give a recommendation to the AFES group to determine whether the person's records met the military criteria for eligibility for deployment." Pl.'s Statement of Material Facts ¶ 16. She also stated that she "would advise the person [employee being considered for deployment] as to the AFES or military standard as [sic] to the test or test result required." *Id.* ¶ 33. This description

12

of her duties clearly constitutes analysis as well as the exercise of discretion and independent judgment. *See* 29 C.F.R. § 541.202(a) ("[T]he exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.").

      Ms. Powell claims that she could not have exercised discretion because she used guidelines and did not make final determinations regarding deployments. An employee, however, may still be exempt if the employee uses manuals to interpret information that can "be understood or interpreted only by those with advanced or specialized knowledge or skill." 29 C.F.R. § 541.704. Ms. Powell's "advanced or specialized knowledge or skill" as a registered nurse enabled her to understand the guidelines and apply contents of the medical records to the information in the guidelines. *See* Def.'s Mot. Summ. J., Ex. 6, Pl.'s Dep. 36:19-37:8, 63:17-66:4, 76:10-78:8; Ex. 14; Ex. 15. The AFES manager did review Ms. Powell's decisions and recommendations. The review of her decisions, however, is irrelevant to whether she exercised discretion. *See* 29 C.F.R. § 541.202(c).

### III.   The Red Cross Is Entitled To Summary Judgment on Ms. Powell's Breach of Contract Claim.

      The Red Cross is entitled to summary judgment on Ms. Powell's breach of contract claim requesting severance pay because there was no contract between the Red Cross and Ms. Powell. First, there is no genuine issue of material fact regarding this claim. Ms. Powell did not dispute that the offer letter to Ms. Powell disclaimed any contractual relationship. *See* Pl.'s Statement of Material Facts ¶ 5. It is undisputed that Ms. Powell herself acknowledged that she did not have any written contract with the Red Cross. *See* Def.'s Mot. Summ J., Ex. 6, Pl.'s Dep. 311:10-311:13; Pl.'s Statement of Material Facts ¶ 6. Further, the Employee Manual itself disclaims that it created a contract with Ms. Powell. *See* Def.'s Mot. Summ J., Ex. 5. The section relating to

severance pay states that it does not form a contract with the employee. *See* Def.'s Mot. Summ. J., Ex. 7. Moveover, the severance language is permissive in that it states severance pay "may be provided" when certain conditions are met. *Id*. As a result, the Red Cross had no obligation to pay severance to Ms. Powell. *See Strass v. Kaiser Found. Health Plan of Mid-Atlantic*, 744 A.2d 1000, 1011 (D.C. 2000) (citing *Smith v. Union Labor Life Ins. Co.*, 620 A.2d 265, 269 (D.C. 1993)).[8]

In her opposition, Ms. Powell's rambling argument seems to suggest that the Red Cross cannot disclaim any contractual obligation because it explained the policy to Ms. Powell when it informed her that she would not receive any severance pay. First, Ms. Powell's estoppel argument is unsupported by any legal basis. Second, even if the policy created a contractual obligation, the Red Cross fulfilled its side of the bargain. The Red Cross offered a position of the same salary at the same location that included similar duties. Ms. Powell's perception that the offered position was not comparable to the Wellness Nurse III position is irrelevant. The Red Cross made the determination that the position was comparable and reasonably supported this decision. Consequently, when Ms. Powell rejected this offer, the Red Cross did not pay her severance.

---

[8]   Ms. Powell's allegation that she is entitled to a transportation allowance is irrelevant. Ms. Powell argues that the transportation allowance "was a benefit that Ms. Powell *would have* received *if* she had continued employment." *See* Pl.'s Statement of Material Facts ¶ 9 (emphasis added). Ms. Powell chose not to continue her employment and, therefore, she is not entitled to any transportation allowance.

                                          Respectfully submitted,

                                          /s/    Constantinos G. Panagopoulos
                                        Constantinos G. Panagopoulos #430932
                                        Ballard Spahr Andrews & Ingersoll, LLP
                                        601 13th Street, N.W., Suite 1000 South
                                        Washington, DC  20005
                                        Tel:    (202) 661-2200
                                        Fax:   (202) 661-2299

March 29, 2007                          *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of March 2007, The American Red Cross's Reply to Plaintiff's Opposition To Its Motion for Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system, which shall send notification of filing to counsel of record below:

Brian C. Plitt
1239 C Street, S.E. - Suite 4
Washington, DC  20003

*Counsel for Plaintiff*

   /s/    Constantinos G. Panagopoulos
Constantinos G. Panagopoulos